UNITED STATES, Appellee,

v.

Staff Sergeant James J. MORRISSEY,
SSN 540–68–3211, United States
Army, Appellant.

SPCM 17230.

U. S. Army Court of Military Review.

20 Sept. 1982.

Captain Peter R. Huntsman, JAGC, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, and Major Robert C. Rhodes, JAGC.

Captain Andrew D. Stewart, JAGC, argued the cause for the appellee. With him on the brief were Major John T. Edwards, JAGC, and Captain Michael R. Smythers, JAGC.

Before O'DONNELL, FOREMAN and WERNER, Appellate Military Judges.

## OPINION OF THE COURT

WERNER, Judge:

Tried by a special court-martial composed of members, appellant, contrary to his pleas, was convicted of five specifications involving wrongful possession, sale and transfer of marihuana in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1976). He was sentenced to a bad-conduct discharge and reduction to the grade of Private E–1. The convening authority approved the sentence.

Appellant contends the evidence is insufficient to support his conviction because the testimony of the government's key witness,

a confidential informant, was not credible when weighed against that of appellant. For the reasons set forth below, we find, as did the court members, that the informant's testimony was credible and that appellant's testimony was not credible.

Private First Class (PFC) Allar was a confidential informant working for the Fort Eustis Joint Drug Suppression Team (JDST). Appellant was his supervisor and the noncommissioned officer-in-charge of four morale support swimming pools. Private First Class Allar testified that, on 8 July 1981, appellant transferred marihuana to him in Allar's off-post apartment and later sold him marihuana at an on-post parking lot. Appellant denied that he had transferred or sold marihuana to PFC Allar on 8 July 1981.

According to PFC Allar's version of the events of 8 July 1981, at lunchtime appellant met him at Allar's place of duty, the officers' club swimming pool. The two proceeded in appellant's vehicle to Allar's off-post apartment for lunch. While there, appellant gave Allar some marihuana saying, "Here's what I owe you." Afterwards, appellant drove Allar back to the officers' club pool and eventually returned to his place of duty at sand pool number 2. Private First Class Allar then drove his vehicle, which had been parked near the officers' club pool, to the JDST office where he reported the incident and delivered the marihuana to the JDST agents.

One of them, Agent Davidson, suggested that Allar set up a controlled purchase of marihuana from appellant later that afternoon. Pursuant to Davidson's request, Allar called appellant at the sand pool and asked him if he could obtain marihuana for him. Appellant said he could and Allar said he would meet him shortly to take possession. Davidson then gave Allar five dollars in marked currency, searched his person and his automobile to verify that Allar had no marihuana in his possession and proceeded to follow him in an unmarked vehicle to his rendezvous with appellant. At about 1500 hours, Allar met appellant at the sand pool, drove him to the parking lot of a local bank and purchased five dollars worth of marihuana from him. Allar testified that appellant took the marihuana from a red back pack he carried with him. Subsequently, appellant entered the bank for a brief period before returning to Allar's automobile. Allar drove him to a nearby office and then went to the JDST office where he turned in the marihuana.

Appellant's testimony differed materially from that of Allar. He admitted he drove Allar to the latter's apartment but denied he went there for lunch or that he transferred marihuana to him. He explained that the purpose of his visit was to repair Allar's automobile and that he did repair it while he was there. He also denied selling marihuana to Allar later that afternoon. Although he admitted going with Allar to the bank, he said his purpose was to deposit morale support funds collected from the operation of the swimming pools.

The record demonstrates that Allar's testimony is credible and appellant's is not with respect to the circumstances involving the transfer of marihuana at appellant's apartment. Although tested by extensive cross-examination, Allar's testimony was consistent and definitive. In contrast, appellant contradicted himself as to his reason for going to Allar's apartment. During cross-examination, he first stated that he drove Allar from his (Allar's) apartment to the officers' club pool because Allar's automobile was parked at the pool. Then, in response to questions from the court, appellant stated, "The reason I went to his house is because he said we did not replace his ignition points inside the distributor, and he said he would purchase some ignition points and he would put them in and he wanted me to set them. I went over there and set them and timed his car at that time." When asked to resolve the inconsistency, appellant was unable to furnish a plausible explanation.*

---

* The record reveals the following dialogue:

Questions by the Defense:

SGT Morrissey, you testified earlier that you worked on PVT Allar's car at his quarters?

We also find Allar to be credible with respect to the events surrounding the sale of marihuana later in the afternoon. Nearly all the details of Allar's testimony were corroborated by Agent Davidson. Davidson testified that he observed Allar dial the telephone number of appellant's place of duty. He heard Allar ask for appellant and have a conversation with an individual named "Jim" with whom he set up a purchase of drugs. He thoroughly searched Allar and his vehicle and discovered no marihuana in his possession prior to his meeting with appellant. He observed Allar meet appellant at the sand pool and drive him to the bank parking lot. He observed appellant in possession of a red back pack. Finally, he confirmed that Allar had delivered the marihuana to the JDST office shortly after leaving the bank parking lot with appellant.

We have considered that evidence in the record which indicates that PFC Allar was amoral, a long-term drug user and may have had a personal motive to testify falsely against appellant. Nevertheless, we hold that his testimony was consistent, positive and credible and are therefore convinced of appellant's guilt. *See United States v. Kelker,* 50 C.M.R. 410 (A.C.M.R.1975).

Appellant also contends that the military judge erred by denying a defense request to call witnesses who would have attested to appellant's good character for truth and veracity. He premises his request on Military Rule of Evidence 608(a), which provides:

The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations:

(1) the evidence may refer only to character for truthfulness or untruthfulness, and

(2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

Appellant has offered two theories in support of his contention. The first posits that certain remarks made by the military judge specifically attacked his character for truthfulness. The second maintains that when the appellant's credibility was impugned by contradictory evidence and his own inconsistent testimony, his character for truthfulness and veracity was also attacked. We disagree.

During questioning of appellant by the court members, the military judge asked him, "SGT Morrissey, somebody is not telling the truth in this courtroom. Can you think of any reason for PFC Allar to lie?" Although appellant characterizes the judge's remark as an attack on his character for truthfulness, we hold otherwise. The context in which the remark was made reveals that appellant had just completed testifying in direct opposition to PFC Allar. The court members had heard testimony indicating that Allar had a history of drug usage, a bad moral character and a possible motive to lie. Concomitantly, they also heard Allar give consistent, definitive evi-

A. Yes, sir.
Q. PVT Allar testified just now that his car wasn't there. Can you clear up that inconsistency a little bit?
A. His wife was a high school senior, and plus in addition she also worked at the Naval Weapons Station. Sometimes she brought him to work, or brought his lunch to work, and he would leave with someone from the pool and they would take him home, and that's why I would lose him sometimes. He would split with some other guard and go home or go to other destinations.
Q. Are you certain that the day you took him home, on 8 July, his car was there at the house?

A. Yes, sir, it sure was, because I had my timing light in my jeep.
Q. Well, it is apparent that his car was back on post later on?
A. Yes, sir. He brought his car back on post. One of the guards, Masco, she always borrowed somebody's car, or one of the guards at the pool took him home to get his car. I don't know which one it was.
Q. And he brought it back?
A. Yes, sir.
Q. There is no doubt in your mind that you worked on his car on 8 July?
A. I sure did, sir.

dence against appellant. At that point, logic and the posture of the evidence dictated that they explore Allar's motive, if any, to inculpate appellant. Appellant may have had some knowledge which could shed some light on this question. Our examination of their questions, contained in the record as appellate exhibits, reveals that their inquiry was directed toward Allar's motive to testify falsely and not the appellant's character for truthfulness. We are satisfied that the military judge understood and conveyed this even though his choice of words is susceptible to misinterpretation. Accordingly, we hold that the military judge's remark did not amount to an attack on appellant's character for truthfulness.

With regard to appellant's second theory, we recognize that when a witness' testimony is impeached or contradicted, it may, under certain circumstances, amount to an attack on his character for truth and veracity. *See United States v. Kehrer,* 41 C.M.R. 892, 895 (A.F.C.M.R.), *pet. denied,* 19 U.S.C.M.A. 599, 41 C.M.R. 403 (1969). However, merely because a witness' testimony is shown to be unworthy of belief does not also mean that such witness has a general propensity to lie. Nor does it follow that when the triers of fact reject such testimony as incredible, they also conclude that the witness is an untruthful person generally. There are three situations in which the triers of fact may reject a witness' testimony as unbelievable. First, when the testimony is internally inconsistent or improbable. Second, when it is contradicted by other evidence which is more believable. Third, when the witness is shown to have a bad character for truthfulness. Only the third situation warrants admission of evidence of the witness' good character for truthfulness under Military Rule of Evidence 608(a). *See United States v. Jackson,* 588 F.2d 1046, 1055 (5th Cir.), *cert. denied,* 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979); *United States v. Medical Therapy Sciences, Inc.,* 583 F.2d 36 (2d. Cir. 1978), *cert. denied,* 439 U.S. 1130, 99 S.Ct. 1049, 59 L.Ed.2d 91 (1979). In this case, such situation was not present.

The record demonstrates that the government did not present any evidence on the appellant's character for truth and veracity. Furthermore, during cross-examination of appellant, the trial counsel's questions were limited to showing that appellant's version of the facts was not credible when compared with that of Allar and the corroborating government witnesses. At no time did he imply or attempt to establish that appellant's testimony was not believable because he was an untruthful person. Indeed, the record indicates this would have been a difficult task as other evidence presented after findings revealed appellant to be an upstanding and religious family man, a scout leader and an outstanding soldier. Nor did the trial counsel argue that the appellant was generally untruthful. To the contrary, the main focus of his argument was to rebut the defense's contention that Allar had a bad character for truth and veracity.

Accordingly, appellant was not entitled under Military Rule of Evidence 608(a) to call witnesses to attest to his truthful character, and the military judge did not err by denying his request.

The findings of guilty and the sentence are AFFIRMED.

Senior Judge O'DONNELL and Judge FOREMAN concur.