James R. MATIAS

v.

The UNITED STATES.

No. 596–88C.

United States Claims Court.

Feb. 28, 1990.

Thomas R. Matias, Albany, N.Y., attorney of record for plaintiff.

James K. Kinsella, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. Melissa Wells–Petry, Office of the Judge Advocate General, U.S. Army, of counsel.

## OPINION

YOCK, Judge.

The plaintiff's complaint seeks military back pay, correction of his military records by voiding his court-martial conviction, attorney's fees and costs, and other relief. In response, the defendant initially filed a motion to dismiss, alleging the Court's lack of subject matter jurisdiction. Thereafter, both parties filed cross-motions for summary judgment. For the reasons discussed herein, the defendant's motion to dismiss is denied, the plaintiff's motion for summary judgment is denied, and the defendant's cross-motion for summary judgment is granted.

### Factual and Procedural Background

The plaintiff, a former U.S. Army enlisted man, is before this Court after having exhausted all the review processes available within the military justice system, including the filing of a writ of *certiorari* to the United States Supreme Court. He was tried by general court-martial on April 19 and 20, 1984, at Fort Lewis, Washington, and convicted of four counts: (1) conspiracy to distribute marijuana; (2) distribution of marijuana on October 18, 1983; (3) conspiracy to possess and distribute cocaine; and (4) possession of cocaine with the intent to distribute on November 15, 1983, in violation of Articles 81 and 134 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 934 (1988), respectively. He was acquitted of one count charging him with wrongfully using marijuana.

The court-martial panel returned a sentence that included a bad-conduct discharge, total forfeiture of pay, reduction to the lowest-enlisted grade, and two years' confinement at hard labor. The convening authority approved the findings and the sentence following a staff judge advocate review as provided in 10 U.S.C. §§ 860–861. Thereafter, the record was referred to the Army Court of Military Review (ACMR) for further review in accordance with 10 U.S.C. § 866, and that court also affirmed the findings and the sentence. *United States v. Matias*, 21 M.J. 1002 (A.C.M.R. 1986). The plaintiff then sought review by the United States Court of Military Appeals (CMA), which granted plaintiff's petition pursuant to 10 U.S.C. § 867(b)(3), and subsequently upheld the conviction and the sentence imposed. *United States v. Matias*, 25 M.J. 356 (CMA 1987). Plaintiff continued to seek review of his conviction by filing a petition for a writ of *certiorari* to the United States Supreme Court under 28 U.S.C. § 1259(3) (1982 & Supp. V 1987), which was denied. *United States v. Matias*, 485 U.S. 968, 108 S.Ct. 1242, 99 L.Ed.2d 441 (1988).

On October 14, 1988, plaintiff filed his complaint in this Court, invoking this Court's jurisdiction under the Tucker Act, 28 U.S.C. § 1491 (1982 & Supp. V 1987), and seeking back pay and correction of his military records by voiding his court-martial conviction. Specifically, the plaintiff advanced three general categories of issues: (1) he was denied due process in appellate review as to four specific issues; (2) he had raised serious claims before the military review courts, which refused to consider them, thereby empowering this Court to conduct a *de novo* review of three additional claims; and (3) he was denied his right to a speedy trial under the Sixth Amendment and denied due process of law under the Fifth Amendment through the use of a trial procedure that allegedly inhibited the careful deliberations by the court-martial panel.

In response to the plaintiff's complaint, the defendant filed its current motion to dismiss alleging that the Court lacks subject matter jurisdiction in view of the 1983 amendments to the UCMJ allowing direct review of a court-martial conviction by the United States Supreme Court. Defendant argues that a denial of *certiorari* is a final judgment and thus precludes any further collateral review by this Court.

Plaintiff thereafter filed his cross-motion for summary judgment and brief in support of such cross-motion and in opposition to defendant's motion to dismiss. In his cross-motion, the plaintiff again asserted the three general categories of issues (nine specific issues) in his complaint which, according to the plaintiff, raise significant constitutional violations of due process and fundamental fairness.

.The defendant then responded by filing a cross-motion for summary judgment, together with its opposition to plaintiff's motion for summary judgment and reply to plaintiff's opposition. Defendant reiterated its challenge of the Court's jurisdiction; and alternatively, argued that if jurisdiction did exist, the plaintiff has failed to present significant constitutional claims so as to render his court-martial void.

While the plaintiff cannot seek a direct review of his court-martial conviction in this Court, he can seek a limited collateral attack of the court-martial conviction on constitutional grounds if his action is otherwise within this Court's jurisdiction. *Bowling v. United States*, 713 F.2d 1558, 1560 (Fed.Cir.1983). Plaintiff's complaint is requesting back pay and correction of his military records—claims that are clearly defined within the jurisdiction of the United States Claims Court. *See* 28 U.S.C. § 1491(a)(2). Despite the plaintiff's claims for back pay and correction of records, he must, however, allege significant defects in the military justice system that rise to a constitutional level before this Court can undertake a collateral review of those proceedings. *United States v. Augenblick*, 393 U.S. 348, 351–52, 89 S.Ct. 528, 531, 21 L.Ed.2d 537 (1969). The plaintiff must con-

vincingly demonstrate that in the court-martial proceedings, there has been such a deprivation of fundamental fairness so as to impair his rights of due process. *Bowling*, 713 F.2d at 1561. Furthermore, in collateral attacks on court-martial proceedings, it is not the role of civil courts to simply reweigh the evidence. If fair consideration has been given to the allegations presented during the court-martial trial and the review process, then the civil courts should refrain from asserting jurisdiction and substituting its judgment for that of the military courts. *Burns v. Wilson*, 346 U.S. 137, 144, 73 S.Ct. 1045, 1049, 97 L.Ed. 1508, *reh'g denied*, 346 U.S. 844, 74 S.Ct. 3, 98 L.Ed. 363 (1953); *Bowling*, 713 F.2d at 1561.

In reviewing the plaintiff's claim, this Court relies upon the following facts, which were found by the ACMR and upheld by the CMA:

On 18 October 1983 Military Police Investigator George P. Case and [a confidential informer, PFC][1] Eaves went to purchase marijuana at an off-post residence located near Fort Lewis, Washington. The residence was shared by Specialist Four Steven R. Todhunter, Specialist Four Charles W. Geisel, and [plaintiff]. When they arrived, Geisel allowed them to enter. [Plaintiff] was in bed at the time. Eaves went to [plaintiff's] bedroom to get him to sell the marijuana. [Plaintiff] refused to get out of bed, saying he was too tired and that Geisel could "take care of it." Geisel initially did not want to participate in the transaction and he and [plaintiff] had a brief argument over the matter. Geisel eventually relented and, upon learning from [plaintiff] that the marijuana was under a desk in Todhunter's bedroom, obtained the marijuana and offered to sell it for $250.00. [Plaintiff], still in his bedroom while the other parties were in the living room, told Geisel it was not worth his time to sell the marijuana for $250.00 and that he wanted $280.00 and no less because he needed the money to repair his car.

---

**1.** Brackets appear in original. *See United States v. Matias*, 25 M.J. at 358.

The transaction was completed and the purchasers departed.

On 15 November 1983, pursuant to a prearranged plan to purchase a half pound of marijuana from Todhunter, Investigator Case and Deputy Sheriff Debra Simcoe, a civilian undercover agent, went to the same residence. Present were Todhunter, Eaves, Curtis A. Kinloc[h] [2] (a civilian drug dealer), and [plaintiff]. Todhunter stated that he did not have the marijuana, but Kinloc[h] offered to obtain a half ounce of cocaine for the agents. Everyone then left the house except [plaintiff], the undercover agents ostensibly to obtain additional funds and the dealers to secure the cocaine. The agents returned before the dealers. Case asked [plaintiff] what were his chances of getting the cocaine. [Plaintiff] said, "a hundred percent" and that he had called and had it all arranged. (The statement seems to be boastful talk by [plaintiff]. Todhunter and Kinloc[h] appeared to have made the arrangements for the cocaine.) Then the telephone rang, [plaintiff] answered, and told the agents that Kinloc[h] did not want to come in because he had seen police cars in the neighborhood. [Plaintiff] and Eaves went outside to determine whether the house was under surveillance. After deciding that it was, [plaintiff] tried to discourage Kinloc[h] and Theodore F. Suepke (another civilian drug supplier) from completing the transaction, but Eaves urged them to continue. Eventually, everyone returned to the house, where Suepke produced the cocaine. [Plaintiff] weighed it and made several remarks about its amount, quality, and appearance. Simcoe activated a concealed beeper that signaled the civilian police outside. Simcoe and Case then drew their weapons and apprehended everyone while the police broke through the front door.

*Matias*, 25 M.J. at 358–59 (citing *United States v. Matias*, 21 M.J. at 1004).

**2.** Brackets appear in original each time this name is used.

## Discussion

### A. Subject Matter Jurisdiction

In support of its motion to dismiss, the defendant asserts that this Court lacks subject matter jurisdiction to hear plaintiff's claims in view of the 1983 amendments to the UCMJ. Specifically, the defendant cites Article 67, 10 U.S.C. § 867(h)(1) (1988), which provides: "Decisions of the Court of Military Appeals are subject to review by the Supreme Court by writ of certiorari as provided in section 1259 of title 28." Military Justice Act of 1983, ·Pub.L. No. 98–209, 97 Stat. 1393, 1406. According to the defendant, the availability of *certiorari* to the United States Supreme Court now forecloses further civil court collateral attacks on court-martial convictions.

Although this Court has traditionally had jurisdiction to hear collateral attacks upon a court-martial conviction when the conviction has back pay and monetary consequences, its range of review is limited to only those issues that raise significant constitutional violations. *Augenblick*, 393 U.S. at 351–52, 89 S.Ct. at 531; *Shaw v. United States*, 174 Ct.Cl. 899, 905, 357 F.2d 949, 954 (1966). Serious constitutional issues have been interpreted by the Supreme Court as follows:

> [A]part from trials conducted in violation of express constitutional mandates, a constitutionally unfair trial takes place only where the barriers and safeguards are so relaxed or forgotten, * * * that the proceeding is more a spectacle or trial by ordeal than a disciplined contest.

*Augenblick*, 393 U.S. at 356, 89 S.Ct. at 534 (citations omitted).

This limited review exists despite the fact that Article 76 of the UCMJ, 10 U.S.C. § 876, expressly states that dismissals and discharges under sentences by court-martial following approval, review, or affirmation are final and conclusive. *Schlesinger v. Councilman*, 420 U.S. 738, 748–53, 95 S.Ct. 1300, 1308–11, 43 L.Ed.2d 591 (1975). Thus,

[T]he constitutional claims made must be serious ones to support an exception to the rule of finality. They must demonstrate convincingly that in the court-martial proceedings there has been such a deprivation of fundamental fairness as to impair due process.

*Bowling,* 713 F.2d at 1561. While jurisdiction exists for "pure issues of constitutional law unentangled with an appraisal of a special set of facts," *Shaw,* 174 Ct.Cl. at 905, 357 F.2d at 954, this Court does not possess jurisdiction to review questions of fact resolved by the military courts. *See, e.g., Flute v. United States,* 210 Ct.Cl. 34, 38, 535 F.2d 624, 626 (1976) ("[t]his court does not have the authority to retry the facts of a court-martial proceeding nor to act as a reviewing court of the decision of the court-martial tribunal"); *Artis v. United States,* 205 Ct.Cl. 732, 740, 506 F.2d 1387, 1391 (1974) ("we have no authority to retry the facts of a court-martial proceeding"); *Taylor v. United States,* 199 Ct.Cl. 171, 174 (1972) ("[t]his court will not reweigh the evidence presented at plaintiff's court-martial in order that it might substitute its judgment for that of the military trial court").

The 1983 amendments to the UCMJ providing direct review by the United States Supreme Court by writ of *certiorari* do not explicitly state that such a review is to deny the opportunity of collateral attack by the accused; but, as stated in the legislative history, this review is granted to afford both parties an opportunity to seek *direct* review of decisions by the Court of Military Appeals. H.R.Rep. No. 549, 98th Cong., 1st Sess. 16 (1983), *reprinted in* 1983 U.S.Code Cong. & Admin.News 2177, 2182 (emphasis added). Previously, the Government had no direct or indirect avenue of judicial recourse when it received an adverse decision in the Court of Military Appeals. *Id.* Likewise the accused had no direct avenue, but did have an indirect avenue to the Supreme Court if the accused chose to mount a collateral attack in a civilian court based on serious constitutional infirmities in the court-martial proceeding.

The Senate Report accompanying the bill likewise stated:

[T]here is no present authority for either party to seek direct Supreme Court review of decisions by the Court of Military Appeals. The accused may attempt to mount a collateral attack at his own expense, a difficult and costly endeavor, but the government has absolutely no judicial recourse from adverse decisions. There is no other major federal judicial body whose decisions are similarly insulated from direct Supreme Court review. The bill authorizes the parties to petition the Supreme Court to review decisions of the Court of Military Appeals through discretionary writs of certiorari.

\* \* \* \* \* \*

Under the current state of affairs, this means that the accused, but not the government, may initiate actions involving military justice issues which eventually might gain the Supreme Court's review. It is the committee's view that is an unsatisfactory way to manage a system of judicial review.

S.Rep. No. 53, 98th Cong., 1st Sess. 8–9 (1983).

Although the statutory language is silent as to what affect this new Supreme Court *certiorari* review would have on future collateral attacks, the testimony heard at the hearings is replete with statements concerning this issue. The Hon. Robinson O. Everett, Chief Judge of the United States Court of Military Appeals, stated:

It has been suggested that the availability of certiorari may lessen collateral attacks on courts-martial. We have not seen recent figures concerning the current level of collateral attacks; and so we cannot evaluate the magnitude of this problem. *However, denial of a petition for certiorari does not preclude collateral attacks that otherwise could be undertaken successfully.* Undoubtedly the Committee is familiar with cases where, after exhausting his remedies on direct appeal by petitioning the Supreme Court for certiorari, a convicted defendant has then undertaken collateral attack on his conviction in a Federal District Court.

*The Military Justice Act of 1982: Hearings on S. 2521 Before the Subcomm. on Manpower and Personnel of the Senate Comm. on Armed Services,* 97th Cong., 2d Sess. 136 (1982) (hereinafter *Hearings*) (emphasis added). In response to the question, "Would the Court [of Military Appeals] favor a system whereby the accused would not have a right of collateral attack if Supreme Court Review could be sought?" Chief Judge Everett testified:

> We do not believe that the right of an accused to undertake collateral attack should be cut off simply because certiorari to the Supreme Court is authorized. Indeed, to attempt such a curtailment might be unconstitutional * * *.

*Hearings* at 170.

The Government's argument that Supreme Court review forecloses subsequent collateral attack proposes to further limit the accused's rights of review, which does not appear to be the intent of the legislation. The hearing testimony indicates that Supreme Court review was granted in order to allow *both* parties the option to seek direct review and does not indicate any restriction of the accused's options in seeking review through the channels that were previously available. In fact, Mr. William H. Taft IV, General Counsel of the Department of Defense, referred to the availability of collateral attack in a federal district court proceeding as being "fortuitous" at the subcommittee hearings, *Hearings* at 84, and stated that "[a]t present, court-martial convictions are reviewed in the federal courts *only* through collateral proceedings * * *." *Id.* at 38 (emphasis added). If the legislation granting Supreme Court review is interpreted to eliminate all collateral attacks, then it would severely limit the review of court-martial convictions—an interpretation that is antithetical to the concerns expressed at the hearings.

Furthermore, only those cases that have first been granted a review by the Court of Military Appeals can pursue a review by the Supreme Court, 28 U.S.C. § 1259, and the Supreme Court cannot review the action of the Court of Military Appeals in refusing to grant a petition for review. 10

U.S.C. § 867(h)(1). Therefore, the Court of Military Appeals holds the key that allows access to the Supreme Court by the accused. This controlled access was, likewise, discussed throughout the hearings in view of the undesirable caseload implications for the Supreme Court. *Hearings* at 21, 39, 84, 136, and 170. The statistics quoted at the hearings revealed that, in 1981, only seven percent of the cases filed with the Court of Military Appeals would have been authorized for potential review by the Supreme Court. *Hearings* at 84. This small percentage would tend to support the plaintiff's argument that Congress did not intend to foreclose all collateral attacks of court-martial proceedings.

In view of the statutory language and the extensive testimony throughout the hearings, this Court finds that the narrow window of collateral attack review given to this Court remains open, but only for those issues that address the fundamental fairness in military proceedings and the constitutional guarantees of due process. *See Augenblick,* 393 U.S. at 356, 89 S.Ct. at 533; *Burns,* 346 U.S. at 142–44, 73 S.Ct. at 1048–50, *Bowling,* 713 F.2d at 1560–61; *see also* Rosen, *Civilian Courts and the Military Justice System: Collateral Review of Courts–Martial,* 108 Mil.L.Rev. 5, 83–84 (1985). If Congress did, in fact, intend to eliminate all collateral attacks, despite its failure to specifically state such an intent in the statute, then the statute must be remedied by Congress and not by this Court. *See Commissioner v. Groetzinger,* 480 U.S. 23, 36, 107 S.Ct. 980, 988, 94 L.Ed.2d 25 (1987) (in the absence of a definition by statute or regulation and in concern over an attempted judicial formulation being counterproductive, leave repair or revision of the [Internal Revenue] Code to Congress where ultimate responsibility rests); *Flood v. Kuhn,* 407 U.S. 258, 284, 92 S.Ct. 2099, 2112, 32 L.Ed.2d 728 (1972) (any inconsistency or illogic resulting from Congress's positive inaction of long standing must be remedied by Congress). Therefore, because plaintiff's complaint alleges that his court-martial conviction and sentence were void on constitutional grounds, this Court continues to have limit-

ed jurisdiction to consider and dispose of the collateral attack in this case. Defendant's motion to dismiss for lack of subject matter jurisdiction is thus denied.

## B. Merits Review

■ As discussed above, this Court retains subject matter jurisdiction to review court-martial convictions that are otherwise within the jurisdiction of this Court. Since the plaintiff is seeking back pay and reinstatement within the military service, he is alleging matters that are within this Court's traditional Tucker Act jurisdiction. As earlier indicated, however, this Court's jurisdiction to review court-martial actions is limited by judicial precedent. This Court may only review those court-martial matters in which the plaintiff alleges and proves that: (1) significant constitutional defects have deprived the plaintiff of due process; (2) fundamental fairness was lacking in the court-martial proceeding; and (3) the review does not simply amount to a retrying or reweighing of the evidence. *See Bowling,* 713 F.2d at 1560–61, and cases cited therein.

### 1. *Denial of Due Process in Appellate Review*

In his motion for summary judgment, the plaintiff alleges that he has been denied due process in appellate review on four specific issues. His first assertion is that the testimony of PFC Eaves, "a confidential informant and a chronic liar," *Matias,* 21 M.J. at 1003, was not corroborated by credible witnesses or other evidence; and therefore, the record is legally insufficient to support his conviction.

The ACMR acknowledged that PFC Eaves was a chronic liar; however, the court stated further that "even the testimony of a liar may be believed when it is corroborated by credible witnesses and not controverted by other evidence." *Matias,* 21 M.J. at 1003 (citing *United States v. Morrissey,* 14 M.J. 746, 748 (A.C.M.R.1982), *petition denied,* 15 M.J. 323 (C.M.A.1983)) (testimony of prosecution witness could be

believed despite the fact that witness was amoral, a long time drug abuser, and may have had a personal motive to testify falsely against the accused).

On appeal, the same issue was raised before the CMA and that court found that PFC Eaves's credibility was a question to be resolved by the court-martial panel under appropriate instructions, which were given. *Matias,* 25 M.J. at 359. Once the military judge had found PFC Eaves to be a competent witness, the CMA noted that "there is no additional legal requirement that the testimony of a competent witness who is also generally regarded as a 'liar' be corroborated." *Id.* The court stated in separate footnotes that although Investigator Case did not observe the plaintiff's participation in the marijuana purchase, Mr. Case's testimony, together with PFC Eaves's testimony, provided "ample support for the finding below." *Id.* at 359 nn. 1–2.

■ The credibility of a challenged witness is for the trier of fact who had the opportunity to see and hear the witness under oath and cross-examination. *Bowling,* 713 F.2d at 1562. It is not within the authority of this Court nor the responsibility of a civil court to reweigh the evidence presented at the plaintiff's court-martial proceeding in order that it might substitute its judgment for that of the military trial court. *Bowling,* 713 F.2d at 1561 (citing *Artis v. United States,* 205 Ct.Cl. 732, 740, 506 F.2d 1387, 1391 (1974)).

■ At plaintiff's court-martial proceeding, he chose to be tried by a court-martial panel of officers. Those officers personally observed PFC Eaves as he testified, as well as Investigator Case and the plaintiff;[3] and thereafter, found the testimony to support a verdict against the plaintiff. The ACMR, which possesses the authority to weigh the evidence and judge the credibility of witnesses, 10 U.S.C. § 866(c), addressed the issue of corroborated testimony and found it to be adequate. *Matias,* 21 M.J. at 1003.

---

**3.** This Court is aware that the plaintiff only testified on the cocaine charges and not on the

marijuana charges; nevertheless, the plaintiff's credibility was in issue.

The CMA again reviewed the same issue and found the testimony to be corroborated. *Matias*, 25 M.J. at 359. If the CMA had any doubts as to the credibility of the witnesses, it could have invoked its power to set aside the findings and the sentence. 10 U.S.C. § 867(d)-(e).

The lack of corroborated testimony is not a constitutional issue, but rather an evidentiary issue and cannot be disguised so as to rise to the level of a constitutional issue. As the Supreme Court stated in *Augenblick*:

> [A]ny error that may be committed in evaluating the evidence tendered is beyond the reach of review by the civil courts.
>
> Rules of evidence are designed in the interest of fair trials. But unfairness in result is no sure measure of unconstitutionality. When we look at the requirements of procedural due process, the use of accomplice testimony is not catalogued with constitutional restrictions.

*Augenblick*, 393 U.S. at 352, 89 S.Ct. at 532 (citation omitted). Moreover, since this issue was raised at and addressed by every military forum available to the plaintiff, it should not be raised again here. The plaintiff has failed to convincingly demonstrate that there has been a deprivation of fundamental fairness on this issue.

█ Plaintiff next alleges that he was denied due process in appellate review because a statement contained in the staff judge advocate's review and the Government's appellate brief to the ACMR asserted that the plaintiff made the phone call to arrange for the cocaine sale, when the call had apparently been made by another witness, Mr. Curtis (Bear) Kinloch. The ambiguity arose from the testimony of Mr. Case: "I asked Matias what my chances were of getting the coke, and he said a hundred percent considering *he* called and had it all arranged" (Tr. 210, emphasis added). Although the plaintiff charges that the ACMR relied on this misrepresentation to find that he was predisposed to sell cocaine, the court recognized that this statement made by the plaintiff might not have been factual and commented to that

effect. The ACMR did, however, find that the statement established plaintiff's inclination to engage in drug activities, irrespective of who actually made the call. *Matias*, 21 M.J. at 1005.

Not only did the ACMR address this alleged error, but the CMA also reviewed it on plaintiff's appeal. The CMA held that any error committed by the court below in reading the record was harmless because: (1) the trial defense counsel did not object to the staff judge advocate's opinion; (2) the ACMR did not consider the statement as an admission by the plaintiff, but only for the limited purpose to show predisposition; and (3) the statement "supports an equally damaging inference that [plaintiff] knew about past drug transactions * * * and he was particularly aware that the charged transaction was in progress." *Matias*, 25 M.J. at 360 (footnote omitted).

In granting civil courts the limited right to review collateral attacks on court-martial convictions, the Supreme Court stated that when the military courts have dealt fully and fairly with the allegations, it is not open to a civil court to repeat the process. *Burns*, 346 U.S. at 142, 73 S.Ct. at 1048. There is no doubt that the ACMR did *not* rely on the statement to infer that the plaintiff arranged the sale as evidenced by the clear admission of that court that "this statement might not have been factual." *Matias*, 21 M.J. at 1005. Rather, it found that the statement did show an inclination to engage in drug activities. This finding by the ACMR resulted after the plaintiff had fully apprised that court of the alleged misrepresentation in his Assignment of Errors and Brief filed with the ACMR on February 25, 1985; in his oral argument on July 16, 1985; and again in his Supplemental Brief filed July 30, 1985.

Thereafter, the CMA considered whether the ACMR had erred in relying on the misrepresentation to find conspiratorial intent. After both parties submitted their respective briefs, the CMA concluded that any error in reading the record was harmless. Any error not of constitutional dimension is harmless when it is determined that the fact finder was not influenced by it

or that the error had but a slight effect on the resolution of the issues of the case. *United States v. Barnes*, 8 M.J. 115, 116 (C.M.A.1979), *reviewed*, 9 M.J. 921 (A.C.M. R.1980).

The plaintiff is simply asking this Court to repeat the same review process one more time in contravention of the standards mandated in *Burns:*

> The[ ] records make it plain that the military courts have heard [plaintiff] out on every significant allegation which [he] now urge[s]. Accordingly, it is not the duty of the civil courts simply to repeat that process * * *.

*Burns*, 346 U.S. at 144, 73 S.Ct. at 1050.

■ Plaintiff's third allegation as to the denial of due process in his appellate review focuses on the chain of custody of the substance alleged to be cocaine, charging that numerous breaks in the chain cast doubt on the genuineness of the evidence produced at the court-martial. This allegation was, likewise, fully argued to the ACMR in plaintiff's Assignment of Errors and Brief and found by that court to be without merit. After review, the court disposed of the claim summarily without elaboration. *See Matias*, 21 M.J. at 1005.

On appeal, the CMA was asked to review whether the ACMR's abbreviated review and findings were supported by the record and in compliance with precedent. In response, the CMA found no error and no requirement mandating that assignment of errors be specifically addressed in a written opinion. *Matias*, 25 M.J. at 361 (citing Rules 15 and 18, *Rules of Practice and Procedure*, Courts of Military Review, 22 M.J. CXXXII and CXXXIV; R.C.M. 1203; *United States v. Hurt*, 9 C.M.A. 735, 756, 27 C.M.R. 3, 24 (1958)).

The CMA concluded that it did not need to determine whether the Government had established a sufficient chain of custody because all the evidence taken together was sufficient for the court-martial panel to find that plaintiff possessed the cocaine as charged. *Matias*, 25 M.J. at 361 n. 6. Such evidence included descriptions by the plaintiff and the other participants of the seized substance as cocaine, as well as tes-timony about the weight of the substance. Additionally, Deputy Simcoe testified that a field test conducted immediately after the seizure showed a positive reaction for cocaine salts.

Plaintiff is again asking this Court to reweigh the evidentiary findings of the military courts with the hope that this Court will substitute its judgment for that of the trial court—a request that is clearly beyond the limited review allowed in this Court. *See Augenblick*, 393 U.S. at 352, 89 S.Ct. at 531; *Bowling*, 713 F.2d at 1561; *Artis*, 205 Ct.Cl. at 740, 506 F.2d at 1391. Furthermore, the plaintiff has not shown, nor can he show, that the military courts have failed to give fair consideration to this claim so as to justify review by this Court. *See Burns*, 346 U.S. at 142, 73 S.Ct. at 1048. Despite the plaintiff's characterization of this claim, an alleged break in the chain of custody does not demonstrate such a deprivation of fundamental fairness as to elevate it to the level of a constitutional claim.

■ Plaintiff's fourth and final contention as to his denial of due process in appellate review is that the evidence of conspiracy in both transactions was legally insufficient because it did not exclude every reasonable hypothesis of innocence. At the first review of plaintiff's contention, the ACMR found that conspiracy to distribute and the distribution of marijuana had been "proven beyond any reasonable doubt," when Mr. Geisel acquiesced in plaintiff's request to "take care of it" and thereafter acted by retrieving the marijuana and distributing it for the price set by plaintiff. *Matias*, 21 M.J. at 1004.

As to the cocaine transaction, the ACMR held that plaintiff's comments as to the certainty of the cocaine being produced (100 percent chance), his actions in determining whether there were police in the area at the request of the dealers, and his later action in weighing the cocaine "amply proved" his participation in a criminal conspiracy. *Id.* at 1005. The ACMR reached this conclusion after it had considered plaintiff's allegations as presented to that

court in a lengthy brief and also during oral argument. *Id.* at 1005 n. 1.

In his appeal to the CMA, the plaintiff again charged that the ACMR erred in applying the law of conspiracy to the evidence of the record. In its review, the CMA, after being furnished extensive briefs by both parties, discussed the charge at some length and concluded that a conspiratorial agreement did exist. It further held that a reasonable jury of rational members could have found the existence of each element of the offense of conspiracy beyond a reasonable doubt. *Matias,* 25 M.J. at 362 (citing *Jackson v. Virginia,* 443 U.S. 307, 313–16, 99 S.Ct. 2781, 2785–87, 61 L.Ed.2d 560 (1979)).

Plaintiff is now asserting the same argument and asking this Court to review the same issue that was presented to and reviewed by both military courts. The CMA determined that a reasonable jury could have found that, based on the evidence, a conspiracy did exist. This Court cannot now retry the facts resolved by the court-martial and the military courts. *See Flute,* 210 Ct.Cl. at 38, 535 F.2d at 626. Although the plaintiff has labeled this argument as a denial of due process, it is more appropriately labeled as one urging this Court to "second guess" the military courts' findings as to the existence of conspiracy. As explained in the previous discussion of plaintiff's due process claims, this Court cannot entertain challenges that are not of constitutional significance. *See Refre v. United States,* 11 Cl.Ct. 81, 84 (1986), *aff'd,* 833 F.2d 1022 (Fed.Cir.1987), *cert. denied,* 486 U.S. 1011, 108 S.Ct. 1743, 100 L.Ed.2d 206 (1988).

■ Plaintiff concludes his assertions of denial of due process by stating that the errors in appellate review were so fundamental and frequent as to leave the impression that "fixing guilt" was the object of the exercise. *See Burns,* 346 U.S. at 142, 73 S.Ct. at 1048. The standard that plaintiff is citing does permit review when the "crude injustices of a trial" result in a guilty verdict "by dispensing with rudimentary fairness." *Id.* There has been no showing by the plaintiff of any such crude

injustice or lack of rudimentary fairness at the plaintiff's court-martial or upon review to allow this Court to override the decisions previously rendered by the military courts.

The military justice system and the civilian justice system have been designed to guarantee all individuals the opportunity to have their day in court. Here, the plaintiff had his day in court before the military judge and panel at the court-martial proceeding, a subsequent day before the ACMR, a different day before the CMA, and sought still another day before the Supreme Court. Providing the opportunity of a day in court does not entail the idea of having multiple days in order to obtain the specific result the party desires. Plaintiff's claims in regard to denial of due process in appellate review have been fully and fairly considered at every proceeding, with no significant constitutional violations having occurred.

### 2. *De Novo Review for Unaddressed Claims*

Plaintiff asserts that the reviewing military courts manifestly refused to consider three separate issues he raised, and therefore, is seeking *de novo* review by this Court. The matters in issue involve: (1) possession of cocaine; (2) entrapment; and (3) aiding and abetting in the sale of marijuana.

All three of these issues were raised to both the ACMR and the CMA through the parties' briefs and oral arguments and were found to be without merit by both courts. *Matias,* 25 M.J. at 361 n. 5, 21 M.J. at 1005. Although the ACMR did not elaborate on its reasoning for finding plaintiff's assertions as to possession and aiding and abetting without merit, it did address the claim on entrapment.

■ In reviewing the plaintiff's claim of entrapment, the ACMR concluded that the evidence excluded any possibility of entrapment, making it "obvious" that the plaintiff was not entrapped by the confidential informant as he contended. *Matias,* 21 M.J. at 1005. The ACMR assessed the evidence in light of the plaintiff's intent or predispo-

sition to commit the crime, which is the focus of the entrapment defense, *United States v. Sermons*, 14 M.J. 350, 352 (C.M. A.1982), and found that "[h]is predisposition to sell cocaine was manifested repeatedly and survived despite his fear of apprehension." *Matias*, 21 M.J. at 1005. Furthermore, the entrapment defense is an issue that must be resolved by the factfinder, *United States v. Russell*, 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973), unless the Government's involvement in the criminal scheme reaches such an outrageous level as to violate due process. Then the issue becomes a matter of law to be determined by the court. *See United States v. Gonzales*, 539 F.2d 1238, 1239–40 & n. 1 (9th Cir.1976) (Government agents' actions of purchasing ink, supplies, and printing press and operating it to aid counterfeiting conspiracy not a violation of due process, but only a well practiced disguise).

Here, the plaintiff is asserting that he was entrapped, not that the actions of the informants violated due process. The issue of entrapment was presented to the court-martial panel by both the plaintiff and the Government, and the military judge at trial instructed the panel as to the meaning of the defense and as to the burden of proof. Based on the evidence presented, the factfinding court-martial panel found that the plaintiff was not entrapped.

On review by the ACMR, prior to issuing its decision on the issue, briefing documents were submitted by both parties, which included substantial discussions on entrapment. After the ACMR's ruling that there was no possibility of entrapment, the plaintiff again, in his appeal to the CMA, asserted that he was entrapped into committing the offenses. *Matias*, 25 M.J. at 361 n. 5.

The CMA, in its review, "accept[ed] the analysis below on the entrapment issue." *Id.* This acceptance must, however, coincide with the judicial philosophy of the CMA:

> We will not override our judicial philosophy obviating a reevaluation of the facts where demonstrated evidence of record supports factual determinations made at the trial level and affirmed by the Court of Military Review.

*United States v. Wilson*, 6 M.J. 214, 215 (C.M.A.1979).

The CMA's standard for review of sufficiency of evidence questions is:

> [W]hether there is, in the record, some competent evidence from which the members of the court-martial were entitled to find beyond a reasonable doubt, the existence of every element of the offense charged.

*Id.* (quoting *United States v. Papenheim*, 19 C.M.A. 203, 205, 41 C.M.R. 203, 205 (1970)). By accepting the analysis of the ACMR, the CMA is acknowledging that the evidence in the record from the court-martial is sufficiently competent to justify the panel members' finding that the plaintiff was not entrapped. Plaintiff's claim that the military courts refused to consider the issue of entrapment is unfounded. This issue has been given full and fair consideration.

In response to plaintiff's assertions that the ACMR erred by not specifically addressing all the assignment of errors made by plaintiff to that court, the CMA found no requirement that a court must articulate its reasoning on every issue, and subsequently found that no legal errors were committed. *Matias*, 25 M.J. at 361, 363 & n. 5.

When an issue has been briefed and argued before a military court, it has received full and fair consideration, even if that court disposes of the claim summarily with a statement that it did not consider the issue meritorious or requiring discussion. *Watson v. McCotter*, 782 F.2d 143, 145 (10th Cir.), *cert. denied*, 476 U.S. 1184, 106 S.Ct. 2921, 91 L.Ed.2d 549 (1986). The record clearly indicates that the other two issues raised by plaintiff (*i.e.*, possession of cocaine and aiding and abetting in the sale of marijuana) were fully briefed and argued to both the ACMR and the CMA.

This Court cannot conduct *de novo* review of any issues that do not meet the constitutional standards of *Augenblick* or

*Burns.* *De novo* review by this Court is not an option to merely retry the claims previously decided by the military courts. Rather, it is for the limited purpose of supplementing an inadequate record or reviewing issues of constitutional dimension. Here, the record is not inadequate nor are the issues of constitutional dimension. Furthermore, the plaintiff had the opportunity to bring each of these contentions to all forums of the military justice system for review and decision, which he did. Consequently, the finality rule of Article 76 of the UCMJ, 10 U.S.C. § 876, bars any additional review by this Court. *See Shaw,* 174 Ct.Cl. at 905, 357 F.2d at 954. On review of this record, the Court can find no deprivation of fundamental fairness as to the issue of entrapment, possession of cocaine, and aiding and abetting in the sale of marijuana.

3. *Speedy Trial/Time of Jury Deliberations*

In this issue category, the plaintiff advances two claims that he characterizes as "pure" constitutional law. The first contention is that he was denied his right to a speedy trial as guaranteed by the Sixth Amendment to the Constitution. The second contention is that he was denied due process of law as guaranteed by the Fifth Amendment to the Constitution in that the court-martial panel was asked to begin deliberations on a complex case late in the day on a Friday of a holiday weekend (Easter weekend).

 As to the speedy trial issue, the plaintiff alleges that because his court-martial proceeding did not occur until April 19, 1984, after his demand for trial was made on February 13, 1984, he lost his detailed military counsel (who separated from the service on February 29, 1984) and therefore suffered prejudice. Such prejudice resulted, according to the plaintiff, when a portion of Mr. Case's testimony given during the first investigative hearing was lost due to a malfunction of the tape recorder, and plaintiff's detailed military counsel was the only attorney present on behalf of the plaintiff. His separation prior to the trial left plaintiff's civilian defense counsel with no knowledge of the testimony for use at the second investigative hearing or at the court-martial trial proceeding.

This alleged defect was argued before the military judge at the start of the court-martial proceeding on plaintiff's motion to dismiss for failure to provide a speedy trial. During argument, it was brought to the attention of the military judge that the record of the first investigative hearing indicated that another civilian attorney associated with the plaintiff's civilian defense counsel, Mr. Opdyke, attended that hearing at the request of plaintiff's civilian counsel. After both parties had presented their full arguments, the motion was denied upon the military trial judge finding that plaintiff's civilian counsel had plenty of opportunities to subsequently talk with Mr. Case.

Plaintiff subsequently raised this denial claim to the ACMR in his brief and devoted ten pages to an elaborate discussion of the claim. The court found the claim to be without merit. *Matias,* 21 M.J. at 1005. On review by the CMA, this issue was presented by both parties through their respective briefs and again found to be insufficient as a matter of law. *Matias,* 25 M.J. at 361 n. 5.

The record before this Court shows that the speedy trial issue was argued and considered before the court-martial trial, in plaintiff's brief to the ACMR, and again in his brief to the CMA. Thus, there is no question that the military courts have given full and fair consideration to this constitutional claim within the meaning of *Burns,* 346 U.S. at 142, 73 S.Ct. at 1048, so that this civil court cannot review the issue again. *See King v. Moseley,* 430 F.2d 732, 734–35 (10th Cir.1970) (court denied review of speedy trial issue since record indicated it was considered by the court-martial judge, the convening authority, and the Board of Review).

Given the constitutional nature of this allegation, with its inherent fundamental rights, a more extensive review, however, may be warranted. Plaintiff contends that as a result of his trial being conducted in April rather than in February, he suffered

prejudice because his military counsel separated from the Army on February 29, 1984. To sustain plaintiff's charge that he has been deprived of his constitutional right to a speedy trial, the four factors identified by the Supreme Court as criteria in reviewing speedy trial issues must be addressed. These factors include: (1) length of delay; (2) demand for trial; (3) reason for delay; and (4) prejudice to the plaintiff. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972).

Plaintiff asserts a delay of 156 days from the date of arrest until the date of the trial. The speedy trial clause does not, however, purport to protect a defendant from all effects flowing from a delay before trial. *United States v. Loud Hawk*, 474 U.S. 302, 311, 106 S.Ct. 648, 654, 88 L.Ed.2d 640, *reh'g denied*, 475 U.S. 1061, 106 S.Ct. 1289, 89 L.Ed.2d 596 (1986). Furthermore, the Supreme Court has held that "when defendants are not incarcerated or subjected to other substantial restrictions on their liberty, a court should not weigh that time towards a claim under the Speedy Trial Clause." *Id.* at 312, 106 S.Ct. at 654. Here, plaintiff was not confined or restricted in any manner, nor did he suffer any revocation of pass privileges during this alleged delay period. Consequently, this assertion has no merit.

Plaintiff's demand for trial was made by his first detailed military defense counsel approximately two weeks prior to his separation from the Army, and plaintiff is now alleging that the demand was ignored. As to this element of the speedy trial analysis, the Supreme Court stated:

> The strength of [plaintiff's] efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, * * * that [plaintiff] experiences.

*Barker*, 407 U.S. at 531, 92 S.Ct. at 2192.

There is no question that the demand for trial was made and received. The "strength" of plaintiff's efforts are, however, questionable. Upon receipt of the demand, the record reveals that the military trial counsel discussed the "possibility of going to court virtually immediately" with plaintiff's detailed military defense counsel. The response by plaintiff's detailed military defense counsel was that trial counsel should talk to plaintiff's civilian defense counsel "as he was in control of the case."

The reason for the delay, according to the plaintiff, was that the military trial counsel failed to contact the plaintiff's civilian defense counsel. At the time the demand for trial was made (February 13, 1984), an investigative hearing had not yet occurred on the second marijuana charge. The delay in preferring this charge was specifically addressed at the court-martial proceeding, and the record discloses that the testimony given at the prior investigative hearing held on January 13, 1984, was a prerequisite for the Government to prefer the second marijuana charge. Additionally, the record states that the delay arose from a "sense of fairness to [plaintiff's civilian defense counsel] in trying to let him be aware of all things which were happening at the time," although it may have been a "misguided" sense of fairness.

This reasoning does not conflict with the guidelines of *Barker:*

> [D]ifferent weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. * * * [A] valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531, 92 S.Ct. at 2192 (footnote omitted). Although the delay here was not due to a missing witness, it certainly does not weigh as heavily as a deliberate attempt to hamper the plaintiff. The demand for trial was made after the second marijuana charge was preferred; therefore, an accusation that the charge was initiated in an attempt to delay the trial cannot be upheld.

Due to the delay, plaintiff asserts that he was prejudiced by losing his detailed military counsel, who heard the testimony of a witness at the first hearing. Prejudice is assessed in light of three interests that a speedy trial is designed to protect: (1) to

prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193.

As stated above, plaintiff was not confined, restricted, nor did he suffer any revocation of pass privileges. Therefore, plaintiff cannot assert any prejudice relating to oppressive pretrial incarceration. As to plaintiff's anxiety, a delay from the date of arrest, November 15, 1983, until the date of trial, April 19, 1984, cannot be found to have created undue prejudicial anxiety and concern when the Supreme Court found in *Barker* that a delay of over four years created prejudice only to "some extent." *Id.* at 534, 92 S.Ct. at 2194.

The possibility of impairing the defense has been designated as the most serious issue within the prejudice element, specifically when witnesses die or disappear during a delay or witnesses are unable to recall events in the distant past. *Id.* at 532, 92 S.Ct. at 2193. Plaintiff has not alleged that his defense has been impaired by reason of unavailable or forgetful witnesses. Rather, the record indicates that plaintiff is simply alleging that he "lost a very substantial right by that delay—the right to have consistent military defense counsel throughout the case," and thereby suffered prejudice.

Plaintiff's position is that the detailed military defense counsel, who represented him for approximately two and one-half months and at the first of two Article 32 investigations, was separated from the service before the court-martial convened. Plaintiff insists that the loss of counsel took on particular significance since the tape recorder broke during the first Article 32 investigation, resulting in the loss of a portion of Mr. Case's direct examination and all of his cross-examination. He further claims that because the Government had presented unreliable witnesses in the trial proceeding, the availability of the Article 32 transcripts became important during the trial as a test for inconsistencies. Since plaintiff's civilian defense counsel did not attend the first Article 32 investigation,

there was no counsel at the court-martial who had any knowledge of the examination of Mr. Case at that investigation. Thus, the plaintiff argues that he was severely prejudiced and denied his right to a speedy trial.

The problem with plaintiff's position is that the prejudice to the plaintiff is overstated. This Court has to take note (as the other reviewing courts have done) that although the plaintiff's civilian defense counsel did not attend the first Article 32 investigation, he did have another civilian attorney, Mr. Opdyke, who was associated with him, present at the investigation. It was clear that the plaintiff's civilian defense counsel had ample opportunity prior to trial to talk with Mr. Case (and for that matter with all the other prosecution witnesses). Under these circumstances, the military judge was quite correct in deciding that there was no prejudice to the plaintiff when his first detailed military defense counsel was not available at the time of trial, and thus denying the plaintiff's speedy trial motion.

In summary, using the balancing factors spelled out in *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192, the Court concludes that the plaintiff was not denied his right to a speedy trial as mandated by the Sixth Amendment to the Constitution. The prior reviewing military courts, as a matter of law, were correct on this fundamental issue.

In addition to the plaintiff's speedy trial issue, he also contends that he was denied procedural due process when the jury was sent to commence its deliberations at 6:00 P.M. on Good Friday (April 20, 1984) following two full days of trial. The panel returned a guilty verdict after 76 minutes, which plaintiff argues was virtually guaranteed by requiring the deliberations to begin at that hour of a holiday weekend. Plaintiff did not, however, object to the panel's timing of the deliberations at the court-martial proceeding.

This contention was thereafter raised during plaintiff's appellate process to both military courts. The ACMR found this claim to be without merit, *Matias,* 21 M.J.

at 1005, and the CMA also found it insufficient as a matter of law. *Matias*, 25 M.J. at 361 n. 5. Both of these decisions were rendered after the parties had submitted extensive briefs to each respective court, thereby negating any allegation of a less than full and fair consideration of the issue by the military courts.

A proceeding is consistent with the requirements of due process provided it is not fundamentally unfair. *Armstrong v. Dugger*, 833 F.2d 1430, 1434 (11th Cir. 1987). Plaintiff has not shown that jury deliberations starting at 6:00 P.M. are fundamentally unfair nor that the jury was unduly pressured into rendering a verdict against him by the time constraints. *See Clark v. Dugger*, 834 F.2d 1561, 1565 (11th Cir.1987), *cert. denied*, 485 U.S. 982, 108 S.Ct. 1282, 99 L.Ed.2d 493 (1988). On the contrary, the jury panel found that the plaintiff was not guilty of one of the specifications of the preferred charges, which would indicate that the panel did not issue a carte blanche decision as to the plaintiff's guilt so as to terminate their duties as quickly as possible in order to enjoy their holiday weekend.

The length of time that the panel deliberated was within its prerogative, and a short period of deliberation does not violate due process when the jury is of one mind before beginning deliberations. *Armstrong*, 833 F.2d at 1434. There is no evidence that would allow this Court to conclude that the timing or the length of the jury deliberations deprived the plaintiff of any fundamental due process rights.

After a careful review of this entire record, this Court concludes that the plaintiff has failed to show in this collateral attack proceeding that his court-martial conviction was void for lack of fundamental fairness. The plaintiff received full and fair consideration of all his claims within the military justice system and no errors of law have been found.

## CONCLUSION

For the reasons discussed above, the defendant's motion to dismiss is denied, and the plaintiff's cross-motion for summary judgment is denied. Defendant's cross-motion for summary judgment is granted, and the plaintiff's complaint is to be dismissed.

Each party is to bear their own costs.