**Anthony LONGVAL, Jr., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 93–569C.

United States Court of Federal Claims.

July 6, 1998.

Kenneth P. Jacobus, Anchorage, Alaska, for plaintiff.

John S. Groat, Washington, D.C., with whom was David M. Cohen, Director, Commercial Litigation Branch, Civil Division, and Frank W. Hunger, Assistant Attorney General, United States Department of Justice, for defendant. Captain Michael Smith, JAGC, USAR, was of counsel.

## OPINION

SMITH, Chief Judge.

Plaintiff Anthony Longval, Jr. seeks relief in this court from his conviction by a court-martial on 14 sex-related charges in 1986. This conviction led to a sentence of dismissal from the United States Army, in which he had held a position of Lieutenant Colonel, Chaplain's Corps. The conviction also resulted in confinement for four years, and forfeiture of $2,500.00 per month for four years. Plaintiff seeks restoration of pay, allowances, forfeitures, and retirement and other benefits lost to him as a result of his conviction. He attacks the conviction collaterally in this court on the following grounds: (1) the Rules of Court–Martial were violated, and thus jurisdiction was lacking, because the military judge received plaintiff's guilty plea, convicted, and sentenced plaintiff after members of the general court-martial had already been sworn in; (2) plaintiff was denied his constitutionally guaranteed (Sixth Amendment) right to effective assistance of counsel during his military trial and appellate proceedings; (3) plaintiff's guilty plea was not knowing or voluntary, due to his psychiatric condition; and (4) plaintiff was denied full and appropriate review by the Army Board for Correction of Military Records (ABCMR), because it failed to review his contentions regarding lack of jurisdiction, ineffective assistance of counsel, and command influence.[1] The court will address these contentions in turn following a brief recitation of the facts.

## FACTS [2]

Plaintiff Longval, a Lieutenant Colonel in the Chaplain Corps of the United States Army, assumed duties at Fort Richardson, Alaska in July 1981. Officially, he was the "Family Life Chaplain," and provided other counseling services. In the spring of 1984, during the course of these duties, plaintiff hypnotized and then had various degrees of sexual relations with four married women who came to him for counseling. Two of these women first reported the alleged acts in October 1985. Plaintiff was apprehended but not charged on October 12, 1985. In November 1985, plaintiff's commanding officer ordered a psychiatric evaluation of plaintiff pursuant to Rules of Court Martial (RCM) 706, to determine whether plaintiff had a mental defect that prevented him from understanding the wrongfulness of his conduct at the time it occurred, and whether "the accused [has] sufficient mental capacity to understand the nature of the proceedings and to conduct or cooperate intelligently in the defense." RCM 706(4). The psychiatric board concluded that plaintiff was not (then) currently, nor at the time of the offenses, suffering from mental disease or defect, and that he was competent to stand trial.

At the subsequent statutorily mandated pretrial investigation, both appointed military defense counsel, Captain Jones, and retained civilian counsel, Mr. Kenneth Norsworthy, represented plaintiff. Evidence was taken and eight witnesses were cross-examined, including two of the women who had accused Longval of misdeeds. This investigatory proceeding (held pursuant to 10 U.S.C. § 832) resulted in a recommendation of trial by general court-martial, meaning that the charges alleged offenses that were warranted by the evidence indicated in the report of the investigation by the convening authority. 10 U.S.C. § 834 (UCMJ Article 34); *see* RCM 406, 407.

During the course of discovery in the court-martial proceeding, plaintiff was evaluated at the request of his military counsel by two board-certified forensic psychiatrists, Colonel Armitage and Captain Ogburn, in March 1986. "Both doctors examined the record of evidence in the case to that point, including the UCMJ Article 32 investigation, the mental health records of [ ] Mr. Longval and the victims, [notes, documents], and a diary maintained by Mr. Longval when he was in Vietnam." Def. Mot. to Dismiss at 6. Both doctors concluded that none of plaintiff's various mental disorders impaired his ability to conform his conduct to the law, and

---

1. Plaintiff has dropped his fifth original contention, that he was entitled to at least a medical discharge rather than a dishonorable discharge. Pl. Opp. to Def. Mot. to Dismiss at 3–4.

2. The court summarizes the facts from defendant's Motion to Dismiss, which plaintiff's brief in opposition accepted in full. Pl. Opp. to Def. Mot. to Dismiss at 1.

that he was competent to stand trial. Also in March 1986, plaintiff retained a different civilian counsel, Mr. Vaughan Taylor. In June, 1986, after requesting a trial before a military judge alone, plaintiff pled guilty to and was convicted of consensual sodomy, indecent assault, indecent acts, adultery, and indecent language. The military judge determined that the plea was entered "freely and voluntarily," that Longval was satisfied with his counsel, and that he was guilty of the charged offenses. The judge then sentenced Longval, after a substantial sentencing hearing that included Longval's own remorseful testimony.

Longval appealed to the Army Court of Military Review (ACMR), a tribunal that independently reviews convictions and sentences *de novo*, and asserted that the military judge erred in his ruling on the multiplicity of certain offenses. The ACMR affirmed both plaintiff's conviction and his sentence in April 1987.

Plaintiff then appealed to the United States Court of Military Appeals (CMA)[3], asserting that: (1) his guilty plea was improvident due to the provision in the pretrial agreement requiring trial by a military judge alone; (2) that his sentence of dismissal was inappropriately severe, given his service record, and (3) that the sexual assault charges were multiplicious, because the underlying conduct supporting each offense was contemporaneous and involved the same woman. The CMA denied Longval's petition for review in November 1987.

Finally, plaintiff sought relief from the Army Board for Correction of Military Records (ABCMR), requesting that his dismissal be upgraded to an honorable discharge. Here, for the first time, he asserted his claims that the court-martial lacked jurisdiction, that he was deprived of effective assistance of counsel, and that undue command influence had been exerted upon him. The ABCMR denied relief on August 14, 1991.

On September 10, 1993, plaintiff, represented by a different counsel, Mr. Jacobus, filed his complaint with this court. This case is now before the court on defendant's Motion to Dismiss.

## DISCUSSION

### I. JURISDICTION OF THE COURT OF FEDERAL CLAIMS

Case law stipulates that civilian courts may not retry military court-martial proceedings. *Bowling v. United States*, 713 F.2d 1558, 1560–61 (Fed.Cir.1983); *Matias v. United States*, 19 Cl.Ct. 635, 639–40, *aff'd*, 923 F.2d 821 (Fed.Cir.1990). However, "[w]hile the plaintiff cannot seek a direct review of his court-martial conviction in this Court, he can seek a limited collateral attack of the court-martial conviction on constitutional grounds if his action is otherwise within this Court's jurisdiction." *Matias*, 19 Cl. Ct. at 638 (citing *Bowling*, 713 F.2d at 1560). Longval's complaint asks for monetary damages from the government (restoration of pay, allowances, forfeitures, and retirement and other benefits lost to him as a result of his conviction), and thus his case falls within this court's Tucker Act jurisdiction. *See* 28 U.S.C. § 1491(a); *Matias*, 19 Cl.Ct. at 638. The scope of this court's jurisdiction to review Longval's court-martial conviction is equally settled. The court cannot review factual determinations made at the various levels of the military courts. It cannot "reweigh the evidence." *Id.* It may review only constitutional or jurisdictional[4] defects that allegedly corrupted the military trial and appellate process, and in so doing, determine whether plaintiff has convincingly shown that the trial was "devoid of fundamental fairness." *Bowling*, 713 F.2d at 1561. The military proceeding must have been "more a spectacle or trial by ordeal than a disciplined contest" to have constituted a constitutionally unfair trial. *United States v. Augenblick*, 393 U.S. 348, 356, 89 S.Ct. 528,

---

**3.** On October 5, 1994, Public Law No. 103–337, § 924, 108 Stat. 2663, renamed 'the United States Court of Military Appeals' the 'United States Court of Appeals for the Armed Forces' and the 'Courts of Military Review' the 'Courts of Criminal Appeals.'

**4.** *Schlesinger v. Councilman*, 420 U.S. 738, 746–48, 95 S.Ct. 1300, 1307–08, 43 L.Ed.2d 591 (1975) (court-martial determinations must be collaterally reviewable for constitutional or jurisdictional error).

21 L.Ed.2d 537 (1969); *Matias*, 19 Cl.Ct. at 639. In sum, the court may review court-martial matters insofar as plaintiff proves by clear and convincing evidence that: (1) significant constitutional defects existed that deprived him of due process; (2) the court-martial proceeding lacked fundamental fairness, and (3) the court's reexamination does not amount to a retrial of the case. *Matias*, 19 Cl.Ct. at 642. The function of this court is to determine whether the military proceedings fairly treated plaintiff's claims. *Matias*, 923 F.2d at 826.

■ As exacting as these standards are, plaintiff must additionally demonstrate that he did not waive the assertion of constitutional or jurisdictional defects by failing to raise them during the military trial. Absent a showing of cause or prejudice, failure to raise federal constitutional claims in the military court system bars a plaintiff from raising them in a federal court. *Davis v. Marsh*, 876 F.2d 1446, 1450 (9th Cir.1989) (analogizing to the waiver rules applicable to state court proceedings). If plaintiff failed to raise any of his claims prior to the Court of Military Appeals decision, he is precluded from raising them now. *Martinez v. United States*, 914 F.2d 1486, 1488 (Fed.Cir.1990) (stating that, because the ABCMR has no authority to void court-martial convictions, raising an issue there does not preserve the issue for collateral review in the Court of Federal Claims). Of the four claims plaintiff is asking this court to review now, only one—the claim that the ABCMR improperly denied relief by declining full and appropriate review of the record—falls outside the ambit of *Davis* and *Martinez*, and by definition could not have been waived, because it challenges the action of the ABCMR itself. The first claim, that the military judge did not have jurisdiction to accept the guilty plea, was in fact only raised at the Court of Military Appeals level. The constitutional claims of

ineffective assistance of counsel and absence of capacity to enter a voluntary and knowing guilty plea were not raised at the Court of Military Appeals, and would thus be waived unless the court determines that these claims rise to the level of prejudice sufficient to overcome the waiver rule articulated in *Davis* and *Martinez*, i.e., the record must provide cause to doubt the veracity of the trial process.[5] The court will address plaintiff's claims in the order presented in his complaint.

## II. JURISDICTION OF THE MILITARY JUDGE TO ACCEPT PLAINTIFF'S GUILTY PLEA

■ Plaintiff argued initially that, once the court-martial was assembled in March 1986 pursuant to RCM 911, the military judge was deprived of jurisdiction to hear the case alone and accept the guilty plea that Longval entered in June 1986. However, in his Opposition to Defendant's Motion to Dismiss, plaintiff boils the issue down to the following: whether the request for trial by military judge alone is justified by the circumstances relating to ineffective assistance of counsel and capacity to plead guilty. Plaintiff thus concedes that the jurisdictional matter is governed by *United States v. Morris*, 49 C.M.R. 653, 1975 WL 15885 (1975), in which the court stated that the submission of a request for trial by military judge alone is not jurisdictional; even an untimely request can be approved by the trial judge. Defendant also correctly points out that RCM 911 does not operate to prevent the military judge from hearing a case alone after the members of the court-martial are sworn. RCM 911 states simply that "[t]he military judge shall announce the assembly of the court-martial." The jurisdictional question that constitutes the basis for this claim must be resolved by dismissing plaintiff's claim.

---

**5.** *See United States v. Olano*, 507 U.S. 725, 730–31, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993) (noting that, in order to overcome the principle of waiver of a constitutional right, there must be plain error that affects substantial rights; plain error may be corrected if the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings.") (citing *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84

L.Ed.2d 1 (1985)). Our jurisdiction to review the claims that plaintiff failed to raise during the military trial and appellate proceedings is not precluded by the Federal Circuit's *Matias* opinion. This court's function is to ensure the fairness and integrity of the trial process. If claims not raised below could affect that integrity, this court must review those claims.

All that could remain of this claim given the fact that the military judge did have jurisdiction to act (and act in accordance with the wishes of plaintiff and his counsel at the time) is the decision plaintiff seeks concerning the "circumstances" of the military judge's action. The question of circumstances encompasses exactly those two constitutional issues which the court examines below. Count One of plaintiff's complaint is therefore dismissed.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. The Applicable Standards

The Sixth Amendment to the United States Constitution states: "In all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense." U.S. CONST. amend. VI. The Supreme Court has since implied standards into this basic prescription, most clearly in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A conviction may be contested based upon ineffective assistance of counsel under the following circumstances:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687, 104 S.Ct. 2052. This two prong test has been characterized as a "but for" inquiry: "The test for prejudice when a conviction is challenged on the basis of established ineffectiveness of counsel 'is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt.'" *United States v. Dickey*, 41 M.J. 637, 640 (1994), *aff'd*, 46 M.J. 123 (1996) (quoting *United States v. Dumas*, 36 M.J. 941, 942 (1993)). The standards are no different in military proceedings than in other federal courts, and counsel will not be retroactively condemned for losing the case or for failing to have adopted a "better" strategic approach. *Allen v. VanCantfort*, 316 F.Supp. 222, 230 & n. 10 (D.Me.1970), *aff'd*, 436 F.2d 625 (1st Cir.), *cert. denied*, 402 U.S. 1008, 91 S.Ct. 2189, 29 L.Ed.2d 430 (1971).

Plaintiff Longval was not entitled to a perfect trial. He was entitled to a fair trial, meaning that the outcome was the product of the adversary system and ought to be treated as reliable by the court. Unless the facts pled by plaintiff indicate to this court that the military proceedings were so fundamentally flawed as to render the outcome unreliable, the court must dismiss this claim.[6]

### B. Plaintiff Longval's Trial Was Not Fundamentally Unfair

Plaintiff asserts that he was deprived of the effective assistance of counsel in the following matters: (1) disclosure of psychiatric reports; (2) failure to move for change of venue; (3) failure to file a motion other than one contesting pretrial confinement; (4) failure to attack the credibility of the alleged victims; (5) effecting a plea of guilty where the elements of the crimes pled to were not present, and (6) failure to protect plaintiff's

---

**6.** The court recognizes that military tribunals have the option of ordering a *"DuBay* hearing," normally employed "for the purpose of taking evidence and entering findings of fact and conclusions of law as useful tools in determining whether counsel had been ineffective". *United States v. Lonetree*, 35 M.J. 396, 413–14 (1992), *cert. denied*, 507 U.S. 1017, 113 S.Ct. 1813, 123 L.Ed.2d 444 (1993) (citing *United States v. DuBay*, 37 C.M.R. 411, 1967 WL 4276 (1967)). As stated at oral argument, though, this court has no authority to remand this case to the military justice system with instructions to conduct a *DuBay* hearing, or any other hearing. The only relief available to plaintiff in the military system is an extraordinary writ to the United States Court of Appeals for the Armed Forces. Nevertheless, the framework of a *DuBay* hearing is itself a useful tool for evaluation of plaintiff's allegations in the current procedural posture of decision on a Motion to Dismiss.

retirement benefits. Defendant contends that the record "belies any present assertion that Mr. Longval's counsels were constitutionally deficient." With respect to each of these allegations, the court must decide whether, if true: (a) there is a reasonable explanation for counsel's actions; (b) the level of advocacy fell measurably below the performance ordinarily expected of lawyers, and (c) whether counsel's errors, if any and if eliminated, would have engendered a reasonable doubt respecting guilt in the mind of the factfinder. *See United States v. Polk,* 32 M.J. 150, 153 (1991).

### 1. *Disclosure of Psychiatric Reports*

■ Plaintiff uses the relevant authority selectively to argue that he was prejudiced by Mr. Taylor's decisions to both seek government-provided psychiatric opinions and to turn those psychiatrists' reports over to the prosecution without plaintiff's knowledge or consent. Assuming the truth of the allegation that plaintiff had no knowledge at the time of the examinations by Doctors Armitage and Ogburn that this information could be used at trial by the prosecution, Mr. Taylor might at most be subject to discipline for misleading his client concerning the confidentiality of his statements to these psychiatrists. Contrary to plaintiff's current assertions, though, Mr. Taylor would have been reasonable in his belief that these reports would, under the Military Rules of Evidence

(MRE), be available to the prosecution upon request. Plaintiff cites several cases in his Opposition to Defendant's Motion to Dismiss, but ignores two more recent cases that are dispositive of this issue. The court in *United States v. Toledo,* 25 M.J. 270, 275–76 (1987), *aff'd on reconsideration,* 26 M.J. 104 (1988), *cert. denied,* 488 U.S. 889, 109 S.Ct. 220, 102 L.Ed.2d 211 (1988), held specifically that the privilege afforded an accused with respect to statements made at a medical examination is inapplicable where the defense seeks the examination, and that examination is subsidized by the government. A psychiatrist-patient privilege does not exist independently of the attorney-client privilege, and the latter does not extend to psychiatrists not procured at the defense's own expense. MRE 501; *Toledo,* 25 M.J. at 276. There is no such thing as an "absolute right" under MRE 302[7] where the defense voluntarily seeks a pretrial mental evaluation from a government doctor. Additionally, even if the statements were privileged, and Mr. Taylor intentionally waived the privilege, he would at most be subject to professional discipline, because the government's access to privileged materials concerning a mental examination does not constitute cause for a new trial, nor does a plaintiff have a viable claim of prejudice on such facts.[8] *United States v. Mansfield,* 38 M.J. 415, 416–18 (1993), *cert. denied,* 511 U.S. 1052, 114 S.Ct. 1610, 128 L.Ed.2d 338 (1994).

---

7.  MRE 302 states in relevant part:
    (a) General rule. The accused has a privilege to prevent any statement made by the accused at a mental examination ordered under RCM 706 and any derivative evidence obtained through use of such a statement from being received into evidence against the accused on the issue of guilt or innocence or during sentencing proceedings....
    (b) Exceptions.
      (1) There is no privilege under this rule when the accused first introduces into evidence such statements of derivative evidence....
    (c) Release of evidence. If the defense offers expert testimony concerning the mental condition of the accused, the military judge, upon motion, shall order the release to the prosecution of the full contents, other than any statements made by the accused, of any report prepared pursuant to RCM 706. If the defense offers statements made by the accused at such examination, the military judge may upon motion order the disclosure of such statements

made by the accused and contained in the report as may be necessary in the interests of justice.
The Editorial Comment to the Rules states that "it is the defense which determines to a great extent what information may be disclosed to the prosecution.... While the defense counsel must be ever aware of the possibility of triggering disclosure, the prosecution must be prepared to utilize the disclosure provisions of [302(c)]."

8.  Plaintiff himself dilutes his own claim of prejudice, stating that "the contents of these [the military psychiatrists'] reports *may have affected* the pre- and post- trial decisions of all parties involved in this case." Pl. Opp. to Def. Mot. to Dismiss at 11 (emphasis added). The possibility that a strategic decision by counsel to seek additional psychiatric evaluation of his client affected trial strategy on both sides is leagues short of meeting the *Strickland* standards for ineffective assistance of counsel.

Plaintiff argues further that there was no reason for Mr. Taylor to seek the opinions of the two military psychiatrists, given the fact that plaintiff had been examined previously. However, plaintiff also rues the fact that the recommendations of Dr. Ogburn and Col. Armitage (inter alia, that Longval not be incarcerated) were not stressed heavily during the sentencing proceedings. The two positions are flatly inconsistent, and provide at least one rational basis for Mr. Taylor's use of the two psychiatrists, thereby vitiating plaintiff's current claim (on this point) of constitutionally defective counsel.

### 2. *Failure to Move for Change of Venue*

■■■■ Plaintiff recognizes that motions for change of venue are rarely granted. More importantly, however, venue is neither jurisdictional nor constitutional, and failure to timely object to venue constitutes an absolute waiver. *United States ex rel. Flemings v. Chafee,* 330 F.Supp. 193 (E.D.N.Y.1971) (in challenging a court-martial conviction, objection to venue waived by failure to raise such in either the answer or prepleading motion), *aff'd,* 458 F.2d 544 (2d Cir.: 1972), *rev'd on other grounds, sub nom Gosa v. Mayden,* 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973); *United States v. Loving,* 34 M.J. 956, 964–65 (1992), *aff'd,* 41 M.J. 213 (1994), *aff'd,* 517 U.S. 748, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996) (change of venue appropriate where there exists so great a prejudice against accused that he cannot obtain a fair or impartial trial); RCM 905(e) (appellant waives right to contest venue by failing to object). The fact that voir dire disclosed no basis for an objection, and the fact that plaintiff's case was tried before a judge, not members of a court-martial, renders Mr. Taylor's failure to object to venue eminently reasonable. Further, plaintiff cites to no authority for his proposition that "the role of the Convening Authority must also be scrutinized,". *See United States v. Nivens,* 45 C.M.R. 194, 196–98, 1972 WL 14152 (1972) (finding no prejudice to accused where the convening authority unlawfully intruded by overruling the judge, and the judge acceded in the error, but there was no indication that the defense was unduly hampered in preparation for trial).

### 3. *Failure to File a Motion Other than One Contesting Pretrial Confinement*

■■■■ Plaintiff's next point is that Mr. Taylor was a constitutionally defective counsel because he failed to file more than one motion throughout the extensive military justice process. The court finds it unnecessary to address this contention in detail because what motions to file and whether to file motions at all, or whether to object to particular testimony, is squarely within the realm of trial strategy. *Strickland* does not allow subsequent counsel's strategic hindsight to support a claim of deprivation of the Sixth Amendment right to assistance of counsel.

### 4. *Failure to Attack the Credibility of the Alleged Victims*

■■■■ Similarly, the court will not now revisit the facts, nor be drawn into judging a credibility contest between competing affidavits over another question of trial strategy. Other than the decision of the accused himself to testify, what witnesses to call is a matter within counsel's discretion, and subsequent counsel's disagreement over such judgment calls does not rise to the level of constitutional inadequacy of representation.

### 5. *Effecting a Plea of Guilty Where the Elements of the Crimes Pled to Were Not Present*

■■■■ Plaintiff Longval pled guilty to adultery, indecent language, sodomy, two specifications of indecent assault, and a number of specific indecent acts. As plaintiff recognizes, the plea agreement bound the prosecution to drop charges of dereliction of duty and rape, among others. Absent evidence of incapacity or duress, which will be discussed below, the court views the plea agreement as a bargained for exchange in which both parties agreed to make certain concessions. There is no allegation that the prosecution failed to abide by the terms of the agreement. Plaintiff now asks this court to reweigh the evidence, and in so doing determine that the evidence did not support the

charged offenses.[9] As stated plainly above, this court will not retry the case. The fact that some of the charges to which Longval pled guilty may not have been completely supported by the evidence is irrelevant in the context of a plea bargain.[10]

### 6. Failure to Protect Plaintiff's Retirement Benefits

■ Again, plaintiff presents this court with an issue of trial strategy. The court is not about to indulge plaintiff's hindsight-based attacks on Mr. Taylor's judgment concerning "risks well worth taking" in the context of the constitutional standard. The fact that "the United States might very well have allowed [retirement benefits] as part of the pre-trial agreement for the purpose of avoiding a trial" is as speculative as plaintiff's other disagreements with Mr. Taylor's litigation tactics.[11]

To summarize, plaintiff's argument that he was denied a fundamentally fair trial due to ineffective assistance of counsel is unpersuasive.[12] In sum, it does not even rise to the level of 20-20 hindsight. It says no more than "if we had done it differently, we might have done better." Such speculation does not show ineffective assistance of counsel. As a matter of law, the disclosure of the psychiatric reports and the failure to object to venue are moot issues, were waived,[13] or at least did not prejudice plaintiff to the extent that he was deprived of his constitutional rights. Further, there is no doubt that plaintiff cannot satisfy *Strickland's* "but for" test with respect to those contentions that bear upon former counsel's strategy. For these reasons, Count Two of plaintiff's complaint must be dismissed in its entirety on the merits.

## IV. CAPACITY TO PLEAD GUILTY

■ Plaintiff argues that, because of longstanding feelings of guilt resulting from post-traumatic stress disorder (PTSD), alcoholism, and abuse of over-the-counter medications, he was not able to "cooperate intelligently" in the defense of his case, and lacked the capacity to voluntarily plead guilty. Defendant counters that "Mr. Longval's extensive psychiatric evaluation, sworn response to the military judge's providence inquiry, and

---

9. Plaintiff provides a detailed factual rebuttal of the charges to which he pled guilty, see Pl. Opp. to Def. Mot. to Dismiss at 17–23, but in so doing provides the court with no reason to believe that such discrepancies were not either: (1) fully weighed by counsel in entering into the plea bargain, or (2) fully and fairly litigated at some juncture of the military proceedings.

10. As stated by the Supreme Court in *McMann v. Richardson*, 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970), "[w]aiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts." Counsel is not constitutionally defective for making a judgment based on such inherent risks. *See United States v. Dickey*, 41 M.J. 637, 641 (1994), *aff'd*, 46 M.J. 123 (1996) (citing *McMann*).

11. See Pl. Opp. to Def. Mot. to Dismiss at 23–24.

12. In *United States v. Polk*, 32 M.J. 150 (1991), the accused was charged with kidnapping and rape, and his attorney neglected to even pursue the testimony of a friend who would have corroborated the accused's version of the events. The court found:

First, Hunter [the friend] and the victim had a long-standing relationship involving arguments, physical fights, and subsequent sexual intercourse. Second, appellant was certainly aware of the relationship between the victim and Hunter. Third, the purpose for the adventure was to convince the victim to engage in sexual intercourse with multiple participants, including appellant and Nelson. Fourth, only Hunter actually engaged in sexual intercourse with the victim. Fifth, Hunter claims that the intercourse was consensual. Sixth, Hunter claims that the victim went voluntarily to the house and was not kidnapped. These are the so-called "set of facts" which defense counsel deemed "at the time" to be untruthful or which, at least, he did not attempt to investigate and prove them to be true.

32 M.J. at 153. In a situation where "[a]ppellant's guilt was founded upon a theory of aiding and abetting [kidnapping and rape]," the court deemed the attorney's conduct to be constitutionally deficient under *Strickland. Id.* The difference between such conduct and the trial strategy debate that plaintiff Longval's current counsel propounds is manifest. *Cf. In re Application of Stapley*, 246 F.Supp. 316 (D.Utah 1965) (holding that a serviceman's right to counsel was violated by representation by officers without experience or training in the law, rendering the court-martial without jurisdiction).

13. *See supra* part I.

his testimony in the sentencing phase of the proceedings leave no reasonable doubt that he was competent to assist in his own defense." Def. Mot. to Dismiss at 26.

The applicable standard for judging whether a guilty plea was constitutionally defective is set forth in *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (criminal defendant must have both sufficient present ability to consult with counsel and rational and factual understanding of the proceedings against him), and was amplified in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In *Boykin,* the court reversed a death sentence because there was no affirmative showing on the face of the record that defendant had voluntarily and intelligently pled guilty. *Boykin,* 395 U.S. at 242, 89 S.Ct. 1709. The Court held that, because a plea of guilty waives the privilege against self-incrimination, the right to trial by jury, and the right to confront accusers, it cannot be presumed voluntary from a silent record; such waiver cannot be truly voluntary unless defendant possesses an understanding of the law in relation to the facts. *Id.* at 243 & n. 5, 89 S.Ct. 1709 (citing *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969)). More recently, in *Godinez v. Moran,* 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993), the Court reaffirmed the *Dusky* standard: the competency standard for pleading guilty or waiving the right to counsel is the same as the competency standard for standing trial, i.e., whether defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and a "rational as well as factual understanding of the proceedings against him." 509 U.S. at 398–99, 113 S.Ct. at 2686–88. The question for this court is whether, assuming the truth of plaintiff's characterization of the record, plaintiff's plea of guilty in June 1986 was constitutionally defective.

Plaintiff has stated that his affidavit, the Affidavit of Robert Alberts, M.D., and the psychiatric reports of Col. Armitage and Dr. Ogburn, together establish that his plea of guilty was not voluntary because of his "psychiatric and psychological condition in 1986...." Pl. Opp. to Def. Mot. to Dismiss at 25. Longval's affidavit, prepared in 1989, states in relevant part:

> Both Mr. Taylor and Captain Jones [military defense counsel] were apparently convinced, and convinced me, that I would do a lot of jail time if I did not plead guilty and get a pretrial agreement. I was in jail, unable to consult with anyone else, I was depressed and suffering from alcohol withdrawal and I had to rely upon what I was being told. I was warned, in no uncertain terms, that I should say nothing to anyone and at the trial, if I did not admit the offenses as negotiated, I would not have the guilty plea approved and I would have to defend against all of the charges and face 50 plus years of confinement or even a lifetime of confinement. The stipulation of fact I signed was prepared and written by Mr. Taylor and Captain Jones and they rehearsed me concerning it. I do not recall either of my lawyers telling me what might happened [sic] to me if I entered a plea of not guilty, they only emphasized what would happen to me if I did not plead guilty.[14]

Affidavit of Anthony Longval, exh. C. to Pl. Opp. to Def. Mot. to Dismiss, at C–7. Dr. Alberts' affidavit, recorded in August 1994, states briefly that: (1) he had treated Longval since November 1990, and (2) Longval was not able in 1986 to overcome his long-standing feelings of guilt and appropriately defend himself, and thus "it is my professional opinion" that his plea of guilty at his general court-martial was not knowing and voluntary. Dr. Alberts' attached letter further avers that "at the time the matter was brought to court, his guilt feelings were so serious that apparently he made no attempt to defend himself or object to any sexual assault charges. It was only afterwards that he realized that he should never have pleaded guilty to assault charges which

---

14. The court notes that this last statement is directly contradicted by Longval's prior statement in the same affidavit that "Mr. Taylor told me I would be required to admit each offense as listed in the pre-trial agreement, and, if I did not, the judge would then void the entire agreement and enter a plea of not guilty for me and judge the case on the original charges."

constituted a felony." Affidavit of Dr. Alberts, exh. F to Pl. Opp. to Def. Mot. to Dismiss at F–6.

The affidavit of Col. Armitage, prepared in April 1986 (prior to Longval's plea) does not aid plaintiff's current case. Col. Armitage found specifically that "[Longval's] mental disorders either singly or together would not reach the level required by the UCMJ to substantially impair his ability to know and understand the criminality or wrongfulness of his acts nor would they substantially impair his capacity to conform his conduct to the requirements of the law." Col. Armitage also stated that he did not believe charges of rape were warranted (in fact, the prosecution dropped these charges pursuant to the plea bargain), and recommended against imprisonment. Similarly, Dr. Ogburn's report, issued in March 1986, diagnosed the same disorders identified by Col. Armitage, and stated the following psychiatric opinions:

> [1] the accused, at the time of the alleged criminal conduct, did have substantial capacity to appreciate the criminality of his conduct;
>
> [2] the accused, at the time of the alleged criminal conduct, did have substantial capacity to conform his conduct to the requirements of law,
>
> [3] the accused has sufficient mental capacity to understand the nature of the proceedings and to conduct and cooperate intelligently in his defense.

Affidavit of Dr. Ogburn, exh. E to Pl. Opp. to Def. Mot. to Dismiss at E–8. Thus, neither of the military psychiatrists' affidavits establish plaintiff's lack of mental capacity to enter a voluntary or knowing guilty plea. In fact, they establish the opposite, and plaintiff's reliance upon them is both misplaced and inexplicable. Taken as true, these affidavits refute plaintiff's claim of an unconstitutional guilty plea.

More importantly, plaintiff's own affidavit demonstrates an adequate understanding of the law and its rational connection to the facts. Longval at least understood the risks of going to trial, and the consequences of the plea of guilty as opposed to those risks. He had not one, but two attorneys advising him, and despite his unsettled mental state (which is understandable given the gravity of the charges),[15] was clearly able to comprehend his options. The fact that in the light of future knowledge, the options might have been weighted differently cannot now be used to rewrite the history of plaintiff's guilty plea. In *United States v. Lilly*, 34 M.J. 670 (1992), the military court (adopting the *Dusky* framework) explained that an accused is mentally competent to stand trial if he has sufficient present ability to consult with his lawyer with a reasonable degree of rational and factual understanding of the proceedings. *Id.* at 675; *see also* R.C.M. 916(k)(3) (accused is presumed mentally responsible at the time of an alleged offense, and the presumption continues until rebutted by clear and convincing evidence of mental irresponsibility). Longval's affidavit establishes that he did consult regularly with counsel, and that he understood the consequences of his actions. In addition, the court finds that the affidavits of the military psychiatrists who examined plaintiff at the time significantly more credible than the single affidavit of Dr. Alberts; the latter is years removed from the relevant mental condition of plaintiff, and provides a fraction of the detail of the other doctors' affidavits. Taken together, the affidavits demonstrate plaintiff's inability to show by clear and convincing evidence [16] that his guilty plea was constitutionally defective due to lack of capacity.

---

**15.** In *Miles v. Dorsey*, 61 F.3d 1459 (10th Cir. 1995), *cert. denied*, 516 U.S. 1062, 116 S.Ct. 743, 133 L.Ed.2d 692 (1996), the Tenth Circuit clarified the legal and factual standards governing constitutional challenges to pleas. The court specifically dismissed petitioner's argument that the time pressure, mental anguish, stress, and depression he experienced during plea discussions rendered his plea involuntary and thus unconstitutional. 61 F.3d at 1470–71. "Although deadlines, mental anguish, depression, and stress are inevitable hallmarks of pretrial plea discussions, such factors considered individually or in aggregate do not establish that Petitioner's plea was involuntary." *Id.* at 1470.

**16.** *See United States v. Frank*, 956 F.2d 872, 875 (9th Cir.1991) (stating that, with respect to evidence on competence to plead, "[c]lear error is not demonstrated by pointing to conflicting evidence in the record."), *cert. denied*, 506 U.S. 932, 113 S.Ct. 363, 121 L.Ed.2d 276 (1992).

Based upon the foregoing, the court deems it unnecessary to delve into the other affidavits submitted in this case in order to resolve the issue of plaintiff's capacity to have entered the June 1986 guilty plea. The court finds no constitutional error in the entry of that plea, and accordingly dismisses this claim on the merits.

## V. ABCMR DENIAL OF PLAINTIFF'S APPLICATION FOR RELIEF

Plaintiff argues that, if he prevails in this court, the government will be forced to repay him the pay he has forfeited (at least for the time between his conviction and his formal dismissal in March 1988), which creates monetary liability and thus jurisdiction under the Tucker Act, 28 U.S.C. § 1491.[17] Defendant asserts that the court lacks jurisdiction to review the ABCMR's denial of relief because the denial of an application for relief, under 10 U.S.C. § 1552, does not create an independent cause of action cognizable under the Tucker Act.

Defendant's contention that 10 U.S.C. § 1552 does not create an independent cause of action is correct. The Federal Circuit has decided that section 1552 does not mandate payment of money, although it does allow for discretionary payment by the Secretary (of the Army, in Longval's case). *Dehne v. United States*, 970 F.2d 890, 893–94 (Fed.Cir. 1992) (quoting the statute). However, defendant's characterization of its argument as jurisdictional is incorrect. *Dehne* holds specifically that the Court of Federal Claims has jurisdiction over appeals from Boards of Correction. *Dehne*, 970 F.2d at 892; *Weide v. United States*, 4 Cl.Ct. 432 (1984) (Claims Court has jurisdiction to review decisions to correct military records, though the scope of review is limited), *aff'd*, 765 F.2d 157 (Fed. Cir.), *cert. denied*, 474 U.S. 822, 106 S.Ct. 74,

88 L.Ed.2d 61 (1985). The question, then, is whether this court, having jurisdiction, can grant the relief plaintiff seeks.

There is no review in this court of "injustice" alleged to have been perpetrated by a Board of Correction under 10 U.S.C. § 1552. *Murphy v. United States*, 993 F.2d 871, 874 (Fed.Cir.1993), *cert. denied*, 511 U.S. 1019, 114 S.Ct. 1402, 128 L.Ed.2d 75 (1994), *reh'g denied*, 511 U.S. 1118, 114 S.Ct. 2123, 128 L.Ed.2d 681 (1994). The court cannot use its incidental equitable power under the Tucker Act to justify reviewing the propriety of an ABCMR decision. "Having jurisdiction over a claim is insufficient by itself to allow the court to grant relief. The issue must also be justiciable." *Bunch v. United States*, 33 Fed. Cl. 337, 339 (1995), *aff'd*, 78 F.3d 605 (Fed. Cir.1996) (citing *Murphy*, 993 F.2d at 872). In *Bunch*, plaintiff requested that this court order correction of military records to reflect a promotion, effecting a reinstatement to extended active duty status at that rank. Plaintiff then pursued his action at the ABCMR, requesting the same relief. The Board of Corrections denied the application, finding that plaintiff's records were "devoid of material error." *Bunch*, 33 Fed.Cl. at 338. Upon the Board of Corrections' decision, the government filed a motion to dismiss in this court, which was ultimately granted due to the nature of the relief plaintiff sought. Importantly, plaintiff in Bunch asked this court to second-guess a personnel decision made by the Army, which the court refused to do: "These promotion and assignment decisions are exactly the types of decisions that are beyond the scope of judicial review." *Id.* at 340. Further, "[t]he merits of the ABCMR decision not to correct Colonel Bunch's military records, just as the merits of the decision not to promote, are within the military's

---

**17.** Plaintiff's Complaint stated the following:
Count Four—Decision of Board for Correction of Military Records
16. On 14 August 1991, the Army Board for Correction of Military Records denied LTC Longval's application for relief. (See Attachment A). In doing so, the Board held that counsel's contentions as to lack of jurisdiction, ineffective counsel, and command influence pertained to matter which were adjudicated finally and conclusively in the court-martial

trial and appellate review process. In fact, this is not correct, and these matters were not finally resolved in the appellate review process. 17. Failure of the Board of Correction of Military Records to consider these items deprived LTC Longval of his right to a full and appropriate review by the Army Board for Correction of Military Records of the items raised in his application.
Pl. Compl. at 5–6.

discretion and beyond the scope of judicial review." *Id.*

Decisions of the Board of Corrections are final unless arbitrary, capricious, in bad faith, unsupported by substantial evidence, or contrary to applicable law; even if this is shown, error is reversible only if substantial and prejudicial to the plaintiff. *Weide v. United States,* 4 Cl.Ct. 432 (1984), *aff'd,* 765 F.2d 157 (Fed.Cir.), *cert. denied,* 474 U.S. 822, 106 S.Ct. 74, 88 L.Ed.2d 61 (1985); *Crispino v. United States,* 3 Cl.Ct. 306 (1983). Plaintiff alleges that the Board of Corrections erred in stating that certain issues had been resolved during the military trial and appellate process when, in fact, they had not. However, they had not been resolved because plaintiff had not asserted them until the ABCMR stage, and, as discussed at length above, are properly decided adverse to plaintiff. Thus, even if the Board of Corrections' action was arbitrary and capricious, in that it made an incorrect statement of what claims had been raised, plaintiff was not prejudiced thereby. The claim of ineffective assistance of counsel has been shown insufficient, the contentions concerning jurisdiction are incorrect, and the question of command influence is not before this court. Further, plaintiff did not allege arbitrary and capricious action by the Board of Corrections. Had he alleged it, he would not have been able to prove it, and this is fatal to his claim. *See Skinner v. United States,* 219 Ct.Cl. 322, 594 F.2d 824 (1979) (Claims Court cannot grant judicial relief from a Correction Board decision unless there was an unlawful or unauthorized act so unsupported by evidence as to be gross injustice, unlawful due to clear legal and factual error, manifest abuse of discretion, or arbitrary and capricious action amounting to bad faith or fraud). Absent such showings—not made in this case—plaintiff's claim must be denied.

## CONCLUSION

This court has rigorously examined plaintiff claims. Had plaintiff met the constitu-

tional standards for either ineffective assistance of counsel or an involuntary guilty plea under the relevant case law, the court would have jurisdiction to either void his conviction or reverse the determination of the ABCMR. The Court of Federal Claims has the power to redress violations of the Constitution and afford relief for clear error or arbitrary and capricious action when such violations or actions have rendered the military justice system suspect. However, this court may not exercise this power to overturn a valid military trial or appellate judgment. While criminal verdicts of guilt are only rarely not harsh, they are not unjust unless specific legal errors were committed. That is not the case here. Therefore, plaintiff's claim must be **DISMISSED**.

IT IS THEREFORE ORDERED that, because the facts of the case are undisputed, *see supra* note 2, defendant is granted summary judgment on all outstanding issues under RCFC 12(b).[18] The challenge of the ABCMR decision must therefore be denied.

It is so ORDERED.

---

**18.** If the facts of the case were in dispute, plaintiff Anthony Longval's Complaint would be dismissed for failure to state claims upon which relief may be granted. RCFC 12(b)(4). However, because the facts are undisputed, and no further submissions of fact or statements of genuine issues would aid the court in disposition of the case, summary judgment is appropriate under RCFC 12(b) (conversion of a Motion to Dismiss into a Motion for Summary Judgment).