Keith A. MOODY, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 02–407C.

United States Court of Federal Claims.

Nov. 18, 2003.

John Bennett Wells, Slidell, Louisiana, for plaintiff.

Jonathan Reid Prouty (argued), U.S. Department of Justice, Washington, D.C., with whom was Assistant Attorney General Robert D. McCallum, Jr., for defendant.

## OPINION

ALLEGRA, Judge.

In this military pay case, the plaintiff, as part of general court-martial pretrial agreement, promised to separate voluntarily from the Marine Corps in exchange for having various charges against him dropped. Thereafter, he was honorably discharged and received a special separation benefit payment of $124,966.80. Six years later, after the time for pursuing further charges against him had passed, plaintiff filed this action seeking his restoration to active duty, presentation of his record to a promotion selection board, and back pay dating back to the date of his separation. He claims, *inter alia,* that his pretrial agreement was the result of ineffective assistance of counsel and that his request for separation thus was involuntary. Not so, defendant retorts and, pursuant to RCFC 12(b)(1) and 12(b)(6), moves to dismiss this case for lack of jurisdiction and failure to state a claim. For the reasons that follow, this court finds in defendant's favor and concludes that its motion to dismiss should be **GRANTED.**

## I. BACKGROUND [1]

Prior to his separation, Keith A. Moody (plaintiff) was a Captain in the United States Marine Corps (the Corps). In 1993, he was investigated for various violations of the Uniform Code of Military Justice (UCMJ). On May 23, 1993, he was relieved of his duties, and on August 24, 1993, was charged with

---

1. For purposes of RCFC 12(b), the court must construe the plaintiff's allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

various crimes under the military justice system.

On September 8, 1993, a pretrial investigation, pursuant to 10 U.S.C. § 832 (1988), was convened; due to a series of delays and continuances, that investigation, however, actually did not commence until November 23, 1993. On January 17, 1994, the investigating officer recommended that plaintiff be tried by a general court-martial. On January 31, 1994, additional charges were filed against plaintiff. On February 9, 1994, plaintiff executed a pretrial agreement, essentially a plea bargain, which provided, in pertinent part, as follows:

1. That for good consideration and after consultation with my counsel, I do agree to accept Non Judicial Punishment [NJP] pursuant to Article 14, UCMJ. That I agree to enter pleas of guilty, at this NJP, to the offenses that are outlined below in this agreement.

2. That I agree to submit for voluntary separation from the U.S. Marine Corps as a part of Phase II of the fiscal year 94 Officer Voluntary Separation Incentive (VSI) and Special Separation Benefit (SSB), pursuant to ALMAR 013/94.

3. That in exchange for my pleas of guilty to the below listed charges, and my application for VSI, the Convening Authority agrees to dismiss all charges presently referred to a General Court–Martial.

4. That this offer originated with me and my counsel; that no person or persons whomsoever have made any attempt to force or coerce me into making this offer.

5. That my counsel have fully advised me of the meaning and effect of this offer and that I fully understand and comprehend the meaning thereof and all of its attendant effects and consequences.

. . . .

7. That I am fully satisfied with my counsel in all respects and consider them qualified in representing me in this matter.

Pursuant to this agreement, an administrative hearing was conducted, and after plaintiff pleaded guilty, he received a punitive letter of remand.

On February 18, 1994, plaintiff submitted his request voluntarily to separate from active duty service with VSI–SSB benefits.[2] Rather than immediately granting this request, plaintiff's Commanding General recommended that a board of inquiry be convened to determine whether his conduct merited an involuntary discharge. While that inquiry was pending, on July 8, 1994, the Corps informed plaintiff that his request to separate voluntarily had been approved, but was being held in abeyance until all judicial and administrative action against him was resolved. On July 18, 1994, the board of inquiry recommended that plaintiff be involuntarily separated from the Corps; a board of review concurred with these results on May 18, 1995. Notwithstanding, on November 22, 1995, the Commandant of the Marine Corps recommended that the Secretary of the Navy disapprove the board of inquiry's recommendation and instead grant plaintiff's request to be voluntarily separated with VSI–SSB benefits. That same day, the Secretary adopted the Commandant's recommendation. On May 1, 1996, plaintiff was separated from the Corps per his request; he received $124,966.80 under the VSI–SSB program and was honorably discharged.

Thereafter, plaintiff became a member of the Corps Reserve. On January 7, 1999, he was notified that because he had twice failed to be selected for the next higher paygrade, the Corps was required, pursuant to 10 U.S.C. §§ 14505 and 14513 (1994), to separate him from the Reserve component. On March 26, 1999, plaintiff applied for relief with the Board for Correction of Naval Records (BCNR), pursuant to 10 U.S.C. § 1552 (1994), requesting numerous corrections to his service record. On June 1, 1999, plaintiff was honorably discharged from the Corps Reserve. On March 21, 2002, he voluntarily withdrew his BCNR application. On April 29, 2002, he then commenced this action.

---

**2.** Under the VSI–SSB program, codified at 10 U.S.C. § 1174a and 1175 (1994), military service members who voluntarily separate from the armed forces may receive, under conditions prescribed by the Secretary of Defense and the Secretary of the military department concerned, significant financial incentives for their separation.

## II. DISCUSSION

The court, of course, first must determine whether it has jurisdiction over this matter. The burden of establishing the court's subject matter jurisdiction rests on the party seeking to invoke it. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Myers Investigative & Sec. Servs., Inc. v. United States,* 275 F.3d 1366, 1369 (Fed.Cir.2002).

Plaintiff buttresses his case on four jurisdictional piers: the Little Tucker Act, 28 U.S.C. § 1346 (2000); the Tucker Act, 28 U.S.C. § 1491 (2000); the Military Pay Act, 37 U.S.C. § 204 (2000); and the Administrative Procedure Act, 5 U.S.C. § 701–06 (2000). Two of these—the Little Tucker Act and the APA—plainly will not bear any weight, as they grant jurisdiction only to district courts. *See Crocker v. United States,* 125 F.3d 1475, 1476–77 (Fed.Cir.1997). Thus, jurisdiction here must lie, if at all, upon the twin abutments of the Tucker Act and the Military Pay Act, with the latter providing the requisite money-mandating provision. *See United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983).

■ Regarding the Military Pay Act, it is axiomatic that "[i]f a discharge from service is voluntary, then [this court] lacks jurisdiction to review the discharge or any back pay damage claims." *Carmichael v. United States,* 298 F.3d 1367, 1371 (Fed.Cir.2002); *see also Moyer v. United States,* 190 F.3d 1314, 1318 (Fed.Cir.1999); *Tippett v. United States,* 185 F.3d 1250, 1255 (Fed.Cir.1999); *Sammt v. United States,* 780 F.2d 31, 33 (Fed.Cir.1985). In *Thomas v. United States,* 42 Fed.Cl. 449, 452 (1998), *aff'd,* 217 F.3d 854 (Fed.Cir.1999), this court, briefly summarizing the rationale of these decisions, observed that when a plaintiff has separated by choice, "it follows as a matter of logic that his final separation and retirement [was] not unlawful and, consequently, he is not entitled to reinstatement to active duty." *See also Gavin v.*

*United States,* 47 Fed.Cl. 486, 490 (2000); *Soeken v. United States,* 47 Fed.Cl. 430, 434 (2000), *aff'd,* 20 Fed.Appx. 900 (Fed.Cir. 2001). In Tucker Act terminology, where a discharge is voluntary, there is no entitlement to compensation under the Military Pay Act and, consequently, no money-mandating provision that triggers this court's jurisdiction. *Rigsbee v. United States,* 226 F.3d 1376, 1378–79 (Fed.Cir.2000); *Tippett,* 185 F.3d at 1255. Of course, the applicability of either preclusive *ratio dicidendi* hinges on the resignation or retirement decision here being truly voluntary.

■ Where a member of the military resigns or retires, it is presumed that his or her decision is voluntary. *See, e.g., Tippett,* 185 F.3d at 1255; *Gavin,* 47 Fed.Cl. at 489; *Heaphy v. United States,* 23 Cl.Ct. 697, 700 (1991), *aff'd,* 972 F.2d 1355 (Fed.Cir.1992) (table). In such circumstances, it is plaintiff's burden to demonstrate otherwise, essentially showing that his decision was not freely made. Such proof may consist of evidence that the resignation or retirement resulted from deception or misrepresentation by a government official, *Moyer,* 190 F.3d at 1320; *Scharf v. Dep't of the Air Force,* 710 F.2d 1572, 1574–75 (Fed.Cir.1983); or was procured through duress or coercion, *Tippett,* 185 F.3d at 1255; *Christie v. United States,* 207 Ct.Cl. 333, 518 F.2d 584, 587 (1975). But, the presumption of voluntariness is not rebutted simply by showing that a service member faced an inherently difficult situation, as where his choice was limited to one of two unpleasant alternatives—"a choice, as the poet says, between ... 'Scylla and Charybdis.'" *Christie,* 518 F.2d at 591 (Skelton, J., dissenting); *see also Dorrall v. Dept. of Army,* 301 F.3d 1375, 1381 (Fed.Cir.2002); *Covington v. Dept. of Health and Human Services,* 750 F.2d 937, 943 (Fed.Cir.1984). This governing principle holds true even where a resignation is offered to avoid a court-martial or other serious discipline.[3]

---

3. *See Christie,* 518 F.2d at 587; *see also, e.g., Scarseth v. United States,* 52 Fed.Cl. 458, 468 (2002) (finding no jurisdiction when plaintiff resigned in face of impending court-martial); *Gallucci v. United States,* 41 Fed.Cl. 631, 645 (1998) (finding no jurisdiction when plaintiff resigned in the face of a recommendation for administrative discharge); *Brown v. United States,* 30 Fed.Cl. 227, 229–30 (1993) (finding no jurisdiction when plaintiff resigned "for the good of the service" following a recommendation of trial by court-

So it appears here—plaintiff resigned to avoid a court-martial. That he was forced to make the best of a bad situation does not, under the above cases, render his decision involuntary. Nonetheless, plaintiff contends, for other reasons, that his decision to resign was not Messian, as in a choice between Scylla and Charybdis, but rather Hobsonian, that is to say, no choice at all.

■ First, he asseverates that his resignation was involuntary because the Corps reneged on his pretrial agreement. To be sure, there was delay in perfecting this deal. But, there is no indication that the Corps ultimately failed to live up to its end of the bargain—after plaintiff submitted his resignation, all charges against him were dropped.[4] *De facto,* that is all he was promised. Contrary to plaintiff's intimations, nothing in the agreement expressly required the Corps to accept his resignation, let alone provide him with VSI–SSB benefits. Even if it did, the fact remains that not only was plaintiff's resignation request granted, resulting in an honorable discharge, but he also received nearly $125,000 in VSI–SSB benefits. Ultimately, then, plaintiff received more—certainly not less—than what was explicitly agreed. Thus, there is no indication that the Corps, in any material way, violated the pretrial agreement so as to negate that agreement and render plaintiff's resignation involuntary.[5]

Mr. Moody, however, maintains that his resignation also was involuntary because, in the time leading up to the pretrial agreement, he suffered from ineffective assistance of counsel. To be sure, various cases, in assessing military pay claims under our jurisdiction, have considered whether, in a court-martial, a service member suffered ineffective assistance of counsel. *See Longval v. United States,* 41 Fed.Cl. 291, 294–95 (1998); *see also Tippett,* 185 F.3d at 1255–56; *Scarseth,* 52 Fed.Cl. at 469–70. And this issue, of course, is commonly encountered by other courts in considering, *inter alia,* whether a criminal defendant's plea resulted from ineffective assistance of counsel and thus was involuntary. *See, e.g., Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Yet, in assessing voluntariness here, this court treads carefully based not only on the Federal Circuit's general direction that collateral attacks of court-martials in back pay cases should focus only on "deprivation[s] of fundamental fairness as to impair due process," *Bowling v. United States,* 713 F.2d 1558, 1560–61 (Fed.Cir.1983), but also on that court's repeated admonition that " '[t]hose who employ the judicial ... process to attack a settlement through which a controversy has been sent to rest bear a properly heavy burden' of proof that the agreement was improperly obtained." *Tiburzi v. Dept. of Justice,* 269 F.3d 1346, 1355 (Fed.Cir.2001) (quoting *Asberry v. United States Postal Serv.,* 692 F.2d 1378, 1380 (Fed.Cir.1982)); *see also Rumsfeld v. Freedom, NY, Inc.,* 329 F.3d 1320, 1327 (Fed.Cir.2003).

Fortunately, whatever considerations might warrant restraint in assessing a close case are not implicated here as the court can scarcely imagine a weaker claim of ineffective assistance of counsel. Imagine, for a moment, an individual facing serious charges that could result in his being imprisoned for a lengthy period—according to defendant, up to 46 years. Then, flash forward to that same person no longer facing charges, with

---

martial), *aff'd,* 26 F.3d 139 (Fed.Cir.1994) (table).

4. Plaintiff contends that the decision to process him for involuntary administrative separation violated, and hence voided, the pretrial agreement. But, prior to the time he submitted his resignation, plaintiff was advised of, and acknowledged in writing, the possibility that he would be subjected to a board of inquiry of the sort subsequently convened. Accordingly, this court does not see how the delay associated with that process voided the agreement, particularly since plaintiff ultimately received more than what he was explicitly promised under the agreement.

5. One might wonder whether even an admitted breach of the agreement would, without more, rebut the presumption that plaintiff's resignation was voluntary. To be sure, various criminal cases indicate that the prosecution's breach of a plea agreement can cause the plea to become involuntary and be withdrawn. *See, e.g., Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *see also Sanders v. United States,* 252 F.3d 1329, 1334 (Fed.Cir. 2001). Whether these same principles apply in this context is a question for another day.

an honorable discharge and nearly $125,000 in severance benefits in hand. Though it reads like a Dickens subplot, the scenario described is the case *sub judice*. Judging from results, then, there is no indication that, as required by the Supreme Court to demonstrate ineffective assistance of counsel, *see Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the performance of plaintiff's counsel here was remotely outside the range of professionally competent assistance, let alone prejudicial. Indeed, while courts have rejected the notion that lack of success is indicative of ineffective assistance, *see, e.g., Sloan v. Delo*, 54 F.3d 1371, 1384 (8th Cir.1995); *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1537 (10th Cir.1994), the reverse cannot be gainsaid—a relatively successful result suggests reasonably competent representation. *See, e.g., Stamps v. Rees*, 834 F.2d 1269, 1276–77 (6th Cir.1987) (partially successful tactics rebut claim of ineffective assistance); *Reese v. Greiner*, 2003 WL 21459577 at *5 (S.D.N.Y. 2003) (same); *United States v. Johnson*, 54 F.Supp.2d 1200, 1206 (D.Kan.1999) (same).

Plaintiff argues, however, that his counsel should have moved to dismiss all charges against him because the Corps failed to comply with Rules for Court–Martial (RCM) 707(a) (1991), under which an accused must be brought to trial within 120 days of the earlier of preferral of charges or imposition of pretrial restriction in lieu of arrest or confinement. But, his argument on this count fails because: (i) certain charges were

filed against him only nine days before the pretrial agreement, and thus well within the 120–day timing of that provision, *see* RCM 707(b)(2) (1991) (each charge treated separately under the timing provision); and (ii) even if his challenge to earlier charges had been successful, in all likelihood the Corps would have been allowed to refile the charges, thereby only postponing plaintiff's reckoning day, *see United States v. Bowles*, 37 M.J. 708 (A.C.M.R.1993); RCM 707(d) (noting that the dismissal may be with or without prejudice). Accordingly, there is no indication that the failure of plaintiff's counsel to seek dismissal of the charges adversely affected plaintiff.[6] Indeed, the contrary may well be true—had plaintiff's counsel sought the dismissal of charges, they may have succeeded only in hardening the government's position, ending any hopes of obtaining the type of pretrial agreement that plaintiff actually received.[7] Under the circumstances, then, plaintiff has not alleged, let alone proven, facts that would lead this court to conclude that the assistance he received was tainted by the sort of serious errors that would vitiate the voluntariness of his resignation.[8]

Finally, plaintiff contends that his resignation was involuntary because it was procured by duress, causing him to resign against his will. In this regard, he cites various instances, between May and November of 1993, in which he was involuntarily subjected to psychiatric evaluations and confined to a mental

---

6. *See DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir.2000) (where no reasonable probability that motion to dismiss indictment would have been successful, guilty plea not tainted by ineffective assistance); *see also Strickland*, 466 U.S. at 694, 104 S.Ct. 2052 (a complaining party must demonstrate a "reasonably probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

7. In *Strickland*, the Supreme Court made clear that, in assessing effectiveness, "scrutiny of counsel's performance must be highly deferential." 466 U.S. at 689, 104 S.Ct. 2052. The Court particularly cautioned against courts applying 20/20 hindsight in assuming that a different strategic approach might have yielded a better result, noting that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the pre-

sumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)); *see also Longval*, 41 Fed.Cl. at 299. At plaintiff's request, the court allowed him to file a supplemental brief seeking to demonstrate that the failure to invoke the speedy trial provisions described above constituted *per se* ineffective assistance. In this submission, however, plaintiff did not cite a single case remotely supportive of this notion.

8. In the court's view, the facts alleged here are not such as would require an evidentiary hearing on the voluntariness issue—indeed, plaintiff did not request such a hearing. In particular, there is no non-frivolous allegation here that plaintiff was misled by his counsel. *Cf. Tippett*, 185 F.3d at 1255.

health facility. To prove duress, a plaintiff must demonstrate: "(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party." *Christie*, 518 F.2d at 587 (citing *Fruhauf Southwest Garment Co. v. United States*, 126 Ct.Cl. 51, 111 F.Supp. 945, 951 (1953)); *see also Rumsfeld*, 329 F.3d at 1331; *Gavin*, 47 Fed.Cl. at 490; *Gallucci*, 41 Fed. Cl. at 638; *Nickerson v. United States*, 35 Fed.Cl. 581, 586 (1996), *aff'd*, 113 F.3d 1255 (Fed.Cir.1997) (table). All three elements must be shown, *Nickerson*, 35 Fed.Cl. at 586, and must be measured objectively, not through the service members's subjective evaluation of a situation. *Christie*, 518 F.2d at 587.

While plaintiff devotes considerable rhetorical energy to his coercion claim, he does not argue that, as a result of his treatment, he lacked the mental capacity freely to submit his resignation or was otherwise bereft of the competency necessary to the making of a contract. Nor is there the slightest indication of this in the record—indeed, the treatment of which plaintiff complains appears to have occurred several months before he signed the pretrial agreement. Moreover, any notion that plaintiff was coerced into signing the pretrial agreement is belied by his subsequent conduct in seeking not to void the agreement, but rather to expedite his discharge and receipt of VSI–SSB benefits. Thus, during the months while the board of inquiry continued to examine his conduct, plaintiff wrote members of Congress seeking their assistance in urging the Corps to effectuate his discharge[9] and later filed a grievance on this point pursuant to Article 138 of the Uniform Code of Military Justice, 10 U.S.C. § 938 (1994). Neither action suggests that he was forced against his will into signing the original agreement—rather, it appears that, over an extended period of time, he remained anxious to enforce that agreement by its terms. *See Jordan v. Dept. of Air Force*, 33 Fed.Appx. 491 (Fed.Cir.2002) (duress not shown where plaintiff filed petition to enforce settlement agreement). Accordingly, this court finds no indication that any of the elements of duress or coercion are present, or could be proven, here.

Plaintiff thus has not rebutted the presumption that his decision to accept the pretrial agreement and resign was voluntary. The court has considered plaintiff's other jurisdictional arguments and finds them to be without merit.[10] As such, this court lacks jurisdiction over his case.

## III. CONCLUSION

This court need go no further. Therefore, it **GRANTS** defendant's motion to dismiss this case under RCFC 12(b)(1) for lack of jurisdiction. The Clerk is ordered to dismiss the complaint herein.

**IT IS SO ORDERED.**

---

9. In letters written to various members of Congress in July of 1994, plaintiff referred to his "sense of resolve" in reaching the February 1994 agreement. He further wrote that "I made the decision to plead guilty to minor offenses of regulations only after being assured I would receive the VSI incentive and be separated.... My only desire now is to put this ordeal behind me and to get on with my life. I would like the Marine Corps to honor their word and written agreement like I have.... I pray that you will take a personal interest in this inquiry, and ask the Secretary of the Navy and the commandant of the Marine Corps why the government has refused to carry out its promised part of our agreement."

10. For example, plaintiff contends that he was protected from discharge by 10 U.S.C. § 632(a)(3) (1994), but that statute does not apply to voluntary resignations. *See* 10 U.S.C. § 623(a)(1) (1994). Contrary to plaintiff's claims, he was never advised otherwise. Likewise, plaintiff's claim that he was entitled to reserve pay under 37 U.S.C. §§ 204 and 206 runs aground on cases that indicate that these statutes apply one where a reservist actually performs work or misses instruction due to some physical disability. *See, e.g., Dehne v. United States*, 970 F.2d 890, 893 (Fed.Cir.1992).